**Brandi HAYWORTH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 07A01–0804–CR–197.

Court of Appeals of Indiana.

April 20, 2009.

686

David C. Grupenhoff, Thomas M. Barr & Associates, Nashville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

A Brown County Deputy Sheriff prepared an affidavit for a search warrant of Brandi Hayworth's house from which a reasonable person could infer that an informant (identified only to the police) had personally observed Hayworth, within the past seventy-two hours, manufacture, possess, and use methamphetamine. A search warrant was issued, and guns, methamphetamine, and numerous items associated with the manufacture of meth-

amphetamine were found. Although it later came out at a suppression hearing that the informant had not, in fact, told the officer that he or she had seen these things, the trial court still denied Hayworth's motion to suppress, finding that the totality of the circumstances corroborated the informant's statements. At trial, Hayworth's attorney attempted to lodge a continuing objection to the evidence seized pursuant to the search warrant. However, after asking for a continuing objection, Hayworth affirmatively said "No objection" to the vast majority of the evidence. We take the opportunity here to clarify that once counsel lodges a sufficiently specific objection to a particular class of evidence and the trial court grants a continuing objection, the proper procedure is to remain silent during the subsequent admission of that class of evidence. We therefore find that Hayworth has waived her objection to the evidence seized during the search warrant for which she affirmatively stated "No objection."

Nevertheless, because Hayworth has invoked the fundamental error doctrine, we reach the merits and determine that the totality of the circumstances does not corroborate the informant's statements because the police did not corroborate *any* illegal activity on Hayworth's part and only confirmed information that was readily available to the general public, such as her address. In addition, although from the probable cause affidavit the informant appears to have observed the criminal activity firsthand, the police officer's testimony at the suppression hearing defeats this inference. Probable cause therefore did not exist for the issuance of the search warrant.

Although the State argues that the good faith exception applies, we rely on the United States Supreme Court's recent decision in *Herring v. United States*, ——

U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and find that the evidence seized pursuant to the search warrant must be suppressed. The police officer's conduct in including the misleading information in the affidavit amounts to deliberate, reckless, or grossly negligent conduct, the conduct is sufficiently deliberate that exclusion of the evidence will meaningfully deter the misconduct, and the conduct is sufficiently culpable that such deterrence is worth the price paid by our justice system. Finding that the error amounts to fundamental error, we reverse Hayworth's convictions for Class B felony dealing in methamphetamine and Class D felony possession of methamphetamine and remand this case to the trial court.

### Facts and Procedural History

On October 24, 2005, Detective Scott Southerland of the Brown County Sheriff's Department filed an affidavit seeking a search warrant for the residence of Josh Thompson and Brandi Hayworth at 8634 Spearsville Road in Brown County, Indiana. The affidavit provides in pertinent part:

I, Deputy Sheriff Scott Southerland, am a Detective with the Brown County Sheriff's Office. In June, 2005 your affiant received information from two independent sources, both of which stated that Josh Thompson was manufacturing methamphetamine at his home on Spearsville Road. One of these sources has provided information in the past that was found to be credible and truthful. The information from both sources was stale and lacked specific details so I did not apply for a search warrant, though I had no reason to doubt the accuracy.

On Sunday, October 23, 2005 I received information that came from a person who provided their name, date of birth, and the telephone number to their par-

ent's home. This person said he/she was at the Josh Thompson/Brandy Hayworth home within the past 72 hours. This person asked to remain anonymous out of fear of retaliation from the suspects in this case. I have no reason to believe the person has an ulterior motive to fabricate a report. This person has not been given or promised anything as an inducement to give information and is not giving information to avoid any kind of legal trouble. This person is a cooperative citizen informant as discussed in *Soliz v. State*, 832 N.E.2d 1022 (Ind.Ct. App.2005) and *Richard v. State*, 820 N.E.2d 749 (Ind.Ct.App.2005).

This person said they wanted to turn in an active meth lab on Spearsville Road. The location was described as a mobile home that could not be seen from the road. The person said power to the mobile home was being supplied by a generator, and there is usually a yellow Chevrolet truck parked in front. The person said there was a black mailbox at the end of the drive, and the mailbox did not have any numbers on it.

This person said Brandy Hayworth and Josh, last name unknown, lived in this mobile home and made methamphetamine there almost every day. This person said there were sometimes children present, and the couple was selling the finished drug to other people.

This person said Brandy and Josh sometimes bury items associated with manufacturing methamphetamine outside the home. They are using a generator to provide electricity to the home.

This person said there were empty batteries in the fire pit behind the trailer, filters with residue inside the trailer, and garbage bags in the back of the yellow Chevrolet pickup truck with stuff in it. There are light bulbs used for smoking it inside, and meth could be

found in the woman's purse and/or in the back bedroom to the left, past the kitchen. They make it in the bathroom. They have tubes and corks that they use there, and they burn the residue from the lab in the fire pit out back.

\* \* \* \* \* \*

On 02/22/2005 charges were filed on Joshua D. Thompson for a traffic infraction. Thompson's address at that time was 8634 Spearsville Road, Brown County, Indiana.

Court records for a civil case in Monroe Circuit Court list Brandi Hayworth as the defendant at 8634 Spearsville Road, Brown County, Indiana.

On Friday, October 21, 2005 Deputy Sheriff Brad Stogsdill served an order to appear for a civil case on Joshua Thompson at 8634 Spearsville Road, Brown County, Indiana. Deputy Stogsdill said this residence is a mobile home. He said there was a generator running outside the home, with a cord from the generator going into the home through a window. He also said there was a yellow truck parked outside. Nobody answered his knock at the door and the order to appear was left on the door. Deputy Stogsdill said he has served Joshua Thompson with civil papers at this address in the past.

Appellant's Br. p. 45–46.

On the morning of October 24, a magistrate issued a search warrant for 8634 Spearsville Road for the purpose of searching and seizing "Methamphetamine, chemicals and/or precursors used to manufacture methamphetamine, paraphernalia and/or equipment used to manufacture or ingest methamphetamine, and indicia of occupancy." Appellant's App. p. 28.

Around 2:00 p.m. that day, Detective Southerland and Indiana State Police officers executed the search warrant and seized guns, methamphetamine, and numerous items associated with the manufacture of methamphetamine.

On the following day, October 25, 2005, the State charged Hayworth with Class B felony dealing in methamphetamine,[1] Class D felony possession of methamphetamine,[2] and Class C felony possession of anhydrous ammonia or ammonia solution with the intent to manufacture methamphetamine while in possession of a firearm.[3]

In October 2007, Hayworth filed a motion to suppress all evidence seized during the execution of the search warrant. She argued that Detective Southerland's affidavit did not "provide probable cause sufficient to support the issuance of a valid search warrant" and, therefore, the search of the premises violated both the United States and Indiana Constitutions. Appellant's App. p. 53. At the January 2008 suppression hearing, Hayworth's attorney questioned Detective Southerland, and he admitted that the informant had *not* seen any methamphetamine at the Spearsville Road property, had *not* seen Josh or Hayworth manufacture methamphetamine on the property, and had *not* seen Josh or Hayworth use methamphetamine. The exact exchange is reproduced below:

> Q Officer, I'm gonna refer back to some testimony that occurred [during] the Motion to Suppress that was filed in the Josh Thompson case. At one point, in that testimony, you were asked the following question, isn't it true that the informant didn't actually tell you that he or she had seen any methamphetamine on the property? Can you answer that

---

**1.** Ind.Code § 35–48–4–1(a)(1).

**2.** Ind.Code § 35–48–4–6(a)

**3.** Ind.Code § 35–48–4–14.5(c)(1).

question? Did the informant tell you that they had seen methamphetamine on the property?

A No. They had not.

Q Okay. There was another question, isn't it also true that the informant never told you that he or she had ever seen Josh or Brandi manufacturing methamphetamine on the property? Had the informant ever told you that they had seen Josh or Brandi manufacturing methamphetamine?

A No.

Q There's one, third question. I'll just—I'll rephrase it. Did the informant tell you whether they had ever seen Brandi or Josh use methamphetamine? I can show you your answer, if it helps.

A No.

Q Okay.

A I'm just trying to remember the—I don't think so, but I don't remember.

Tr. p. 22–23. This testimony is in stark contrast to the following language contained in Detective Southerland's affidavit seeking a search warrant for the Spearsville Road property: the informant said he or she had been to Josh and Hayworth's house within the past seventy-two hours, said he or she "wanted to turn in an *active* meth lab," said Josh and Hayworth "made methamphetamine there almost every day," and said "meth could be found in the woman's purse and/or in the back bedroom to the left, past the kitchen. They make it in the bathroom." Appellant's Br. p. 45–46 (emphasis added).

Strangely, following these damaging responses from Detective Southerland, the State did not follow up with him to clarify what the informant told him he or she actually *did* see.[4] Instead, the State argued the good faith exception pursuant to

*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677(1984). The trial court made the following comments before taking the suppression matter under advisement:

Um, I think there was some confirmation. I mean, first of all, the individual provided their name and date of birth to the officer, so it wasn't an anonymous tip. Um, they wanted to remain anonymous in terms of the Affidavit and pursuing it from there. But it's not somebody just calling up who wasn't willing to give their name. They did give their name. And there was some confirmation, in terms of truck that had been related to have been parked outside. They confirmed that. That there was a generator hose going out, checked Court records in terms of the addresses, the name. Um, as noted by Mr. Szakaly, some of that, that they checked, was easily ascertainable and doesn't provide a great deal of support for what the informant gave them because it is *so easily ascertainable. One thing that concerns me is that, as I read this affidavit, I would take it to mean the person saw all the stuff. He never actually says that, but that's certainly how I would read it.* And that, I take into consideration in terms of the good-faith as well.

Tr. p. 25 (emphasis added). Both parties then submitted briefs to the trial court in support of their respective positions.

On January 17, 2008, the trial court issued the following order denying Hayworth's motion to suppress:

The court, having conducted a hearing on January 7, 2008 on the defendant's motion to suppress and having considered the parties' briefs, now finds that

---

**4.** It appears that much more information was brought out during Josh's suppression hearing. However, we only have the transcript from Hayworth's suppression's hearing.

viewing the totality of the circumstances as set forth in the affidavit submitted in support of the search warrant, the defendant's motion should be, and hereby is, denied.

Appellant's App. p. 90. No interlocutory appeal was taken, and a jury trial ensued.

During Hayworth's jury trial, the State introduced into evidence the numerous items seized during the execution of the search warrant. Specifically, Detective Southerland, after establishing that Hayworth lived at 8634 Spearsville Road, testified that one of the first things he found was "a plastic bag that had the inside parts of a lithium battery inside of it. That was sitting on top of a container of salt on the dining room table." Tr. p. 155. Detective Southerland then explained that lithium is the essential ingredient in the methamphetamine manufacturing process. Hayworth said "I don't object" when a photograph of this evidence (Exhibit 2) was introduced.[5] *Id.* at 156.

Shortly thereafter, Detective Southerland testified about finding a notepad containing a methamphetamine shopping list (Exhibit 5). Some ingredients on the list included a smoke hose and smoke salt, both of which Detective Southerland said are used in the manufacturing process. At this point, Hayworth lodged a "continuing objection to *all* this evidence because there was a Motion to Suppress filed prior to this with regard to *all* of the things they've found and they wanted—Just note my continuing objection to *any* of this evidence,

pursuant to that motion." *Id.* at 162 (emphases added). The trial court stated, "Objection based on the basis for the Motion to Suppress will be denied." *Id.* at 162–63.

When the State then introduced a photograph of pseudoephedrine foil blister packs (Exhibit 6), Hayworth said, "Subject to the continuing objection, no objection." *Id.* at 164. Similarly, when the State introduced a photograph of two firearms found in the bedroom (Exhibit 7), Hayworth said, "No objection other than continuing." *Id.* at 165. However, when the State promptly introduced a close-up photograph of one of the firearms (Exhibit 8), Hayworth said, "No objection." *Id.* And when the actual firearms (Exhibits 9 and 10) were introduced, Hayworth stated, "No objection." *Id.* at 166. Hayworth also said "No objection" when glass jars and a grinder (Exhibits 11 and 12), both of which Detective Southerland said are used in the manufacturing process, were introduced. However, when Detective Southerland talked about video surveillance equipment and additional battery components he found on the property, Hayworth remained silent.

This same haphazard pattern of objecting and not objecting continued during the testimony of Indiana State Police Officer John Patrick. For example, when the State introduced photographs of battery strippings (Exhibits 14 and 15), Hayworth said, "Subject to the same continuing objection, I have no objection." *Id.* at 187. But when the State introduced a photo-

---

5. Exhibits 3 and 4 are photographs of a black purse as well as Social Security Cards and Hoosier Health Cards for Hayworth's children that were found inside the purse. Also found inside the purse was a baggie containing a white powder, which was subsequently tested. When the search of the purse was mentioned, Hayworth objected as follows:

> Just for the record, I'm gonna object to any evidence that might come from the purse

> because I believe that they needed [a] separate warrant to enter the purse, other than the warrant that they had to search the premises in general. And I would object, for the record.

Tr. p. 158. The trial court overruled Hayworth's objection. However, when Exhibits 3 and 4 were actually introduced, Hayworth said, "No objection." *Id.* at 159, 160.

graph of a propane tank containing anhydrous ammonia (Exhibit 16), Hayworth said, "No objection." *Id.* at 189. Hayworth also said "No objection" to photographs of a reaction vessel (Exhibits 17 and 18), *id.* at 190; to a sample taken from the reaction vessel (Exhibit 19), *id.* at 192; to a photograph of another tank containing anhydrous ammonia (Exhibit 20), *id.* at 193; to a photograph of lithium battery packaging and a methamphetamine ingredient shopping list found in the back of the truck (Exhibit 21), *id.* at 196; and to photographs of a can of toluene, an ingredient used to manufacture methamphetamine, also found in the back of the truck (Exhibits 22 and 23), *id.* at 197.

The jury found Hayworth guilty as charged, but the trial court only entered judgment of conviction for Class B felony dealing in methamphetamine and Class D felony possession of methamphetamine. The court sentenced Hayworth to an aggregate term of seven years with one year suspended to probation. Hayworth now appeals.

### Discussion and Decision

Hayworth raises several issues on appeal, one of which we find dispositive. Hayworth contends that the trial court erred in admitting the evidence seized during the execution of the search warrant at 8634 Spearsville Road because probable cause did not exist for the issuance of the search warrant. The State initially responds that Hayworth has waived this issue by requesting a continuing objection to the evidence seized during the execution of the search warrant but then stating "no objection" when some of the items were introduced. In any event, the State argues that probable cause existed for the issuance of the search warrant and that if

probable cause did not exist, the good faith exception applies. In the event that we find waiver, Hayworth argues that the fundamental error doctrine applies.

### I. Continuing Objections

The State writes that it "has no intention of nit-picking Hayworth into a 'waiver' corner; but that said, it seems clear on the face of any record that there is a big difference between silence, following a 'continuing objection' being lodged, on the one hand, and an explicit statement that evidence meets 'No objection' whatsoever." Appellee's Br. p. 16. "It would have been one thing to remain silent, having already referenced the motion to suppress. But Hayworth did more than that...." *Id.* at 18. Hayworth "has [thus] waived her challenge to any of the evidence that was met with an explicitly stated claim of 'No objection.'" *Id.*

Hayworth, however, responds that she lodged a continuing objection to "all" the evidence found during the execution of the search warrant at 8634 Spearsville Road, thereby preserving the issue for review. In addition, Hayworth argues that even though she periodically said " 'no objection' rather than 'no objection other than the continuing objection[,]' [it] was no more than shorthand, and the real-world recognition that the objected-to evidence had been identified, the basis for the objection stated, and the ruling made." Appellant's Reply Br. p. 4. "Counsel's ... statements of 'no objection' clearly meant no *other* objection." *Id.* at 5.

■ Indiana recognizes continuing objections.[6] Robert Lowell Miller, Jr., 12 Indiana Practice, § 103.110 at 63 (3d. ed.2007); *see also Smith v. State*, 565 N.E.2d 1059, 1061 (Ind.1991) ("the *Hobson*

---

6. "Federal courts have long recognized the durable [running/continuing] objection." 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5037.5 (2008 Update).

[v. State(1986, Ind.App., 495 N.E.2d 741] court expressly approved of using the device of a continuing objection.")) (quotation omitted), *overruled in part; Simmons v. State,* 760 N.E.2d 1154, 1159 (Ind.Ct.App. 2002) ("We have not expressly disapproved continuing objections."). This is because continuing objections serve a useful purpose in trials. That is, they avoid the futility and waste of time inherent in requiring repetition of the same unsuccessful objection each time evidence of a given character is offered. Miller, § 103.110 at 62.

■ However, as this case illustrates, there are dangers to using continuing objections. As such, the proper procedure must be carefully followed if attorneys wish to use continuing objections and still properly preserve the admission of specific evidence as an issue on appeal. First, objecting counsel must ask the trial court to consider the same objection to be made and overruled each time a class of evidence is offered. *Id.* It is within the trial court's discretion to grant counsel a continuing objection. If the trial court grants the continuing objection, then counsel does not have to object each time the class of evidence is subsequently offered.[7] Miller, § 103.110 at 62. This is an exception to the general rule that a party must continue to object and obtain a ruling for each individual instance of inadmissible evidence. 75 Am.Jur.2d *Trial* § 325 (2008). If, however, the trial court does not specifically grant the right to a continuing objection, it is counsel's duty to object to the evidence as it is offered in order to preserve the issue for appeal. *Id.*

■ If the class of evidence to which the continuing objection is lodged is sufficiently defined,[8] the trial court is satisfied that repeated objections to the evidence would be futile, and the trial court grants the continuing objection, presentation of the evidence is enhanced and frustration and impatience is reduced. *See* Miller, § 103.110 at 62–63. Objecting counsel must ensure, however, that the continuing objection fully and clearly advises the trial court of the specific grounds for the objection. *Id.* at 63–64; *see also Simmons,* 760 N.E.2d at 1159; *Sullivan v. State,* 748 N.E.2d 861, 864 (Ind.Ct.App.2001); 75 Am. Jur.2d at § 325. If so, the issue is sufficiently preserved for appeal. *Sullivan,* 748 N.E.2d at 864.

■ We now apply these principles here. Detective Southerland testified that one of the first things he found was "a plastic bag that had the inside parts of a lithium battery inside of it. That was sitting on top of a container of salt on the dining room table." Tr. p. 155. Detective Southerland then explained that lithium is

---

7. According to Federal Practice and Procedure:

A "continuing objection" is one in which the trial court agrees that a particular objection, once made, will apply to subsequent introduction of the same or similar evidence. In some states, the "continuing objection" is also known as a "standing" or "running" objection. But whether "standing" or "running", the "continuing objection" serves as something like a "topical objection"; that is, it allows a party to preserve error as to a whole line of proof without the need for repeating the objection every time the opponent elicits another bit of evidence and without fear that silence will be taken as waiver of the objection. Wright & Graham, § 5037.5 (footnotes omitted).

8. Federal Practice and Procedure warns that the use of continuing objections "shifts the problem from the trial judge to the appellate judges who must, after the fact and with a skimpy record, determine at just what targets the trial judge thought the objection aimed." Wright & Graham, § 5037.5. Therefore, the objecting attorney must specify the target of the continuing objection. *Id.*

the essential ingredient in the methamphetamine manufacturing process. Hayworth said "I don't object" when a photograph of this evidence was introduced (Exhibit 2). *Id.* at 156. This damaging evidence was indisputably in the record before Hayworth ever mentioned a continuing objection. Shortly thereafter, Detective Southerland testified about finding a notepad containing a methamphetamine shopping list. At this point Hayworth said:

> Judge, I need to make a continuing objection to *all* this evidence because there was a Motion to Suppress filed prior to this with regard to *all of the things they've found* and they wanted—Just note my continuing objection to any of this evidence, pursuant to that motion.

*Id.* at 162 (emphases added). Though inartfully worded, it is apparent that Hayworth was asking the trial court for a continuing objection to all of the evidence seized during the execution of the search warrant at 8634 Spearsville Road, which she challenged in her motion to suppress (and which is included in the record on appeal). The trial court responded, "Objection based on the basis for the Motion to Suppress will be denied." *Id.* at 162–63.

Hayworth then lodged a "continuing objection" to the pseudoephedrine foil blister packs and photographs of two firearms found in the bedroom (Exhibits 6 and 7). However, when a close-up photograph of one of the firearms (Exhibit 8) was introduced, Hayworth said, "No objection." *Id.* at 165. And when the actual firearms (Exhibits 9 and 10) were introduced, Hayworth again stated, "No objection." *Id.* at 166. Hayworth also said "No objection" when glass jars and a grinder (Exhibits 11 and 12), both of which are used in the manufacturing process, were introduced. *Id.* at 167, 168.

From Detective Southerland's testimony, we see several problems with Hayworth's attempt to invoke a continuing objection to the items seized during the execution of the search warrant. First, the trial court did not specifically grant Hayworth a continuing objection. Instead, the court denied Hayworth's objection for the same reason that it denied Hayworth's motion to suppress. Because the court did not grant Hayworth a continuing objection, she must have objected to each and every piece of evidence in order to preserve her challenge to that evidence on appeal.

Further, after lodging a continuing objection to the methamphetamine shopping list, Hayworth lodged a "continuing objection" to two more items of evidence (Exhibits 6 and 7). However, as explained above, the main point of a continuing objection is that counsel does *not* have to object to the class of evidence (here, that class of evidence was the evidence seized during the execution of the search warrant) after the trial court has granted a continuing objection so that the flow of trial is not interrupted by counsel's objection and time is not wasted on the trial court's denial of the objection for the same reason already articulated. Even though Hayworth repeated her continuing objection to Exhibits 6 and 7, for Exhibits 8–12, Hayworth—inexplicably—said, "No objection." And, the same occurred during Officer Patrick's testimony. That is, Hayworth lodged a continuing objection to Exhibits 14 and 15 but—again, inexplicably—said "No objection" to Exhibits 16–23.

By stating "No objection," we find that Hayworth has waived her objection to that evidence. The proper procedure, assuming the trial court granted the continuing objection, would have been for Hayworth to have remained silent when the State

introduced those various exhibits. But Hayworth did much more than that. Instead, she affirmatively said, "No objection." This was confusing to the trial court, the State, and now us, the reviewing court, leaving us to speculate why she bounced back and forth between continuing objection and no objection. On appeal, Hayworth asserts that "No objection" really meant "no objection *other than the continuing objection*." However, we will not read "No objection," a simple and powerful two-word phrase, to have such meaning. This is especially so when Hayworth alternated between using continuing objection and no objection. This then leaves us with the fact that Hayworth has affirmatively said "No objection" to the vast majority of the evidence against her. And as for the evidence to which she did lodge a continuing objection, some competing evidence came in. For example, Hayworth objected to photographs of two firearms but then said "No objection" when the actual firearms were introduced. We thus find that Hayworth has waived her objection to the admission of the evidence seized during the execution of the search warrant.

■■■ Nevertheless, Hayworth asserts that the admission of the evidence seized during the execution of the search warrant amounts to fundamental error. Appellant's Br. p. 7. "The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of an issue on appeal." *Jewell v. State*, 887 N.E.2d 939, 940 n. 1 (Ind. 2008). The fundamental error exception is extremely narrow. *McQueen v. State*, 862 N.E.2d 1237, 1241 (Ind.Ct.App.2007). To qualify as fundamental error, the error must be "so prejudicial to the rights of the defendant as to make a fair trial impossible." *Carden v. State*, 873 N.E.2d 160, 164 (Ind.Ct.App.2007). The fundamental error

exception "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *McQueen*, 862 N.E.2d at 1241. We now proceed to analyze whether the admission of the evidence rises to the level of fundamental error.

## II. Probable Cause for Search Warrant

■■■ Hayworth contends that the trial court erred in admitting the evidence found during the execution of the search warrant because probable cause did not exist for the issuance of the search warrant. Specifically, she argues that Detective Southerland's affidavit does not contain information that establishes that the totality of the circumstances corroborates the informant's statements.

■■■ In deciding whether to issue a search warrant, " '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Spillers*, 847 N.E.2d 949, 952–53 (Ind.2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "The duty of the reviewing court is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id.* (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317). "A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Id.* (citing *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997)). A "reviewing court" for these purposes in-

cludes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* Although we review *de novo* the trial court's substantial basis determination, we nonetheless afford " 'significant deference to the magistrate's determination' " as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. *Id.* (quoting *Houser,* 678 N.E.2d at 98–99).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The text of Article I, Section 11 of the Indiana Constitution contains nearly identical language. These constitutional principles are codified in Indiana Code § 35–33–5–2, which details the information to be contained in an affidavit for a search warrant.[9] *Spillers,* 847 N.E.2d at 953. Where a warrant is sought based on hearsay information, the affidavit must either:

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Ind.Code § 35–33–5–2(b).

 The trustworthiness of hearsay for the purpose of proving probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. *Jaggers v. State,* 687 N.E.2d 180, 182 (Ind. 1997) (citing generally *Gates* ). These examples are not exclusive. "Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay." *Id.* One such additional consideration is whether the informant has made a declaration against penal interest. *Spillers,* 847 N.E.2d at 954.

Here, the trial court found that the totality of the circumstances corroborated the informant's statements. *See* I.C. § 35–33–5–2(b)(2).[10] In his affidavit, Detective Southerland does not tell us much about the informant, other than he or she provided his or her name, date of birth, and parent's telephone number and that he or she was not receiving any incentive.[11]

---

9. In her brief, Hayworth writes that the inquiries "under the statute and the Fourth Amendment are nearly identical and will be treated contemporaneously." Appellant's Br. p. 8 n. 8. For purposes of this opinion, we do the same. Hayworth does not cite the Indiana Constitution.

10. Subsection (b)(2) was added in 1984 to track *Gates.* *Jaggers,* 687 N.E.2d at 183 n. 2.

11. Although in his affidavit Detective Southerland categorizes the informant as a "coopera-

tive citizen" pursuant to *Soliz* and *Richard,* our Supreme Court more recently clarified in *Kellems v. State:*

> We continue to believe that there may well be greater indicia of reliability in the report of the "concerned citizen" as distinguished from the "professional informant"—though again the totality of the circumstances controls—but this goes only to reasonable suspicion, *not, as the prior cases suggest, probable cause.*

There is absolutely no evidence that the informant had given police correct information in the past. Independent police investigation confirmed the informant's allegations concerning Hayworth's address and the fact that there was a yellow truck near the property and a generator supplying power to the mobile home, but these facts are readily available to the general public. *See Spillers*, 847 N.E.2d at 954 (citing cases). In addition, the informant did not predict any conduct or activity on Hayworth's part.

Detective Southerland described the basis of the informant's knowledge as having been to Josh and Hayworth's house within the past seventy-two hours. It is true that " 'a statement that the event was observed firsthand' entitles the tip to 'greater weight than might otherwise be the case.' " *Jaggers*, 687 N.E.2d at 183 (quoting *Gates*, 462 U.S. at 234, 103 S.Ct. 2317). However, Detective Southerland's testimony at Hayworth's suppression hearing appears to defeat any inference that the informant personally witnessed any illegal activity for which Hayworth was ultimately convicted. Despite the affidavit's language that the informant "wanted to turn in an *active* meth lab," said Josh and Hayworth "made methamphetamme there almost every day," and said "meth could be found in the woman's purse and/or in the back bedroom to the left, past the kitchen. They make it in the bathroom," Appellant's Br. p. 45–46, Detective Southerland testified at the suppression hearing that the informant did *not* tell him that he or she had seen any methamphetamme at the Spearsville Road property, did *not* tell him that he or she had seen Josh or Hayworth manufacture methamphetamme on the property, and did *not* tell him that he or she had seen Josh or Hayworth use methamphetamme. Even the trial court expressed the following concern at the suppression hearing:

> One thing that concerns me is that, as I read this affidavit, I would take it to mean the person saw all the stuff. He never actually says that, but that's certainly how I would read it.

Tr. p. 25. Given Detective Southerland's testimony at the suppression hearing, we find much of his affidavit, then, to be misleading. This is especially so since there was no clarification following Detective Southerland's damaging testimony as to what the informant allegedly *did* see. As our Supreme Court alluded to in *Jaggers*, "The statement of firsthand knowledge could just as easily have been fabricated to make the underlying allegation appear more credible." 687 N.E.2d at 184.

As a result, we are left with the following. An informant provided his or her name, date of birth, and parent's telephone number to the police only. The informant alleged that he or she had been to Hayworth's house within the past seventy-two hours, wanted to turn in an "active meth lab," and that Hayworth was selling the finished product. The police confirmed limited information—address, vehicle, and generator—that was readily available to the general public. However, the police did not corroborate *any* information related to the manufacture, possession, or sale of methamphetamine.[12] In fact, even

---

842 N.E.2d 352, 356 (Ind.2006) (emphasis added), *remanded on other grounds on reh'g*. Because this case indeed involves probable cause, the State does not make a "cooperative citizen" argument pursuant to *Soliz* and *Richard* on appeal.

12. Detective Southerland's affidavit does contain two reports from June 2005 that Josh was manufacturing methamphetamine at the Spearsville Road property. However, this information is conclusory and, as Detective Southerland even admitted in his affidavit, lacking detail. While stale information may be considered as part of the totality of the

though the informant said that there was evidence of methamphetamine activity *outside* Hayworth's house, the police did not confirm this. Even without excising the misleading hearsay information from the affidavit,[13] the informant's claim that Hayworth was operating an active methamphetamine lab and possessed and sold methamphetamine was entirely uncorroborated. As such, the hearsay in this case fails to satisfy either the Fourth Amendment or Indiana Code § 35–33–5–2. Probable cause did not exist to support issuing a warrant to search the Spearsville Road property. Nevertheless, the State argues that the good faith exception pursuant to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies, and suppression of the evidence is not required.

### III. Good Faith Exception

▆ The lack of probable cause does not automatically require the suppression of evidence obtained during a search. *Spillers*, 847 N.E.2d at 957. Since briefing was completed in this case, the United State Supreme Court issued its opinion in *Herring v. United States*, — U.S. —, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), expounding upon *Leon's* exclusionary rule. In *Leon*, the United States Supreme Court held that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. *Spillers*, 847 N.E.2d at 957. *Leon* cautioned, however, that the good faith exception is not available in some situations, including where (1) the magistrate is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" or (2) the warrant was based on an affidavit "so lacking in indicia of probable cause as to

circumstances creating probable cause, it must still provide evidence from which the magistrate can determine whether the informant has credibility and whether the report can be corroborated. *Snover v. State*, 837 N.E.2d 1042, 1050 (Ind.Ct.App.2005). Because Detective Southerland's affidavit does neither, the June 2005 reports have no value whatsoever in determining whether probable cause existed to issue the search warrant.

**13.** This Court excised misleading information contained in an affidavit seeking a search warrant in *Bryant v. State*, 655 N.E.2d 103 (Ind.Ct.App.1995). In *Bryant*, a mother called a Drug Task Force Hotline to report that she was "concerned" about a man she knew by the name of Lamont Brown who wanted to date her daughter. She said that he was staying at a Comfort Inn in Muncie. After gathering some additional information, including the man's real name of Lashan Bryant and hotel room number, the police officer prepared an affidavit seeking to search his hotel room. Included in the affidavit was the following allegation:

> 4) That on November 22, 1993, a concerned citizen called the Drug Task Force

Hot line [sic] and advised that a subject from Ohio was selling drugs from room 237 of the Comfort Inn located on Bethel Ave[.] in Muncie ...

*Id.* at 106–07 (footnotes omitted). Because the mother never told the officer that the man was selling drugs from the hotel (but instead just expressed "concern" for her daughter), we found paragraph 4 to be "at best, misleading, and at worst, false." *Id.* at 108. In addition, we noted that the mother gave a different name and did not know the hotel room number. Therefore, we excised the portions of the affidavit that lacked factual support. *Id.* at 109.

Here, Detective Southerland's misleading inferences in his affidavit that the informant personally observed Josh and Hayworth manufacturing, possessing, and using methamphetamine permeate the entire affidavit. Because the police did not corroborate any criminal activity, we could alternatively excise the entire portion of the affidavit related to the informant's statements. This would then leave us with no allegations whatsoever of criminal activity (as discussed above, the allegations from June 2005 are entirely uncorroborated).

render official belief in its existence entirely unreasonable." *Id.* (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. 3405). The good faith exception has been codified at Indiana Code § 35–37–4–5.

■ At issue in this case is the first exception, that is, a magistrate being misled by information in an affidavit.[14] The United States Supreme Court clarified in *Herring* that to trigger the Fourth Amendment's exclusionary rule, the "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 129 S.Ct. at 702. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct or in some circumstances recurring or systemic negligence." *Id.* The pertinent analysis of deterrence and culpability is objective; it is not an inquiry into the subjective awareness of the officer. *Id.* at 703.

Here, Detective Southerland prepared an affidavit from which a reasonable person could infer that the informant, who had allegedly been to the Spearsville Road property within the past seventy-two hours, had personally observed Hayworth manufacture, possess, and use methamphetamine. To be sure, the affidavit contained such allegations as the informant wanted to turn in an *"active* meth lab," Hayworth made methamphetamine there "almost every day," Hayworth was "selling the finished drug to other people," methamphetamine could be found in Hayworth's purse or the back bedroom, and Hayworth made methamphetamine in the bathroom. However, at the suppression hearing, Detective Southerland testified that the informant had *not* told him that he or she had seen any methamphetamine on the property, had *not* told him that he or she had seen Josh or Hayworth manufacture methamphetamine, and had *not* told him that he or she had seen Josh or Hayworth use methamphetamine.

■ We conclude that Detective Southerland's admissions at the suppression hearing amount to deliberate, reckless, or grossly negligent conduct. Police officers have a duty and obligation of full and fair disclosure of all material facts when applying for a warrant. *See Jaggers,* 687 N.E.2d at 185 ("In applying *Leon,* our

---

**14.** Oddly, the State does not cite this exception. Instead, the State cites Detective Southerland's testimony from the suppression hearing that he had no reason to doubt the truth or accuracy of the affidavit's contents or the warrant's validity and that he trusted the magistrate who issued the warrant and claims this satisfies the good faith exception:

> Q When you—You are the one that signed off, under penalties of perjury, that the contents of that Affidavit for Search Warrant were true and accurate?
> A Yes.
> Q Was everything true and accurate?
> A Yes.
> Q And, did you discover that anything was not along the way?
> A No.
> Q When you submitted that affidavit, did you, um, receive the Search Warrant and serve it—Did you believe it was valid?
> A Yes.
> Q Okay. And did you have any reason to doubt that, that Search Warrant would not be valid for any reason?
> A No.
> Q Did you trust that the Brown Circuit Court Magistrate would be the one to make the determination as to whether or not there was sufficient evidence for that Search Warrant?
> A Yes.
> Q And you relied on that?
> A Yes.

Tr. p. 19. This portion of Detective Southerland's testimony, however, came *before* Hayworth questioned him about the informant *not* actually seeing Hayworth manufacture, possess, or use methamphetamine.

cases have stressed the importance of *accurately* presenting all relevant information to the magistrate.") (emphasis added); *see also Dolliver v. State,* 598 N.E.2d 525, 529 (Ind.1992) (finding good faith exception did not apply where a detective "flagrantly misrepresented" the facts in obtaining a search warrant and therefore acted in "reckless disregard of the truth"). And when there is a material omission of fact, this amounts to deliberate, reckless, or grossly negligent conduct. Even the trial court said at the suppression hearing that Detective Southerland's affidavit made it seem like the informant had personally observed all of these things. Because the State did not follow up with Detective Southerland at the suppression hearing, we do not know from *this* record what, if anything, the informant personally observed. And as Hayworth points out in her reply brief, the State makes no effort on appeal to explain, reconcile, or justify the discrepancies between Detective Southerland's affidavit and what the informant actually told him.

In addition, we conclude that Detective Southerland's conduct is sufficiently deliberate that exclusion of the evidence will meaningfully deter the misconduct and that it is sufficiently culpable that such deterrence is worth the price paid by our justice system. Although, as the *Herring* Court said, the principal cost is "letting guilty and possibly dangerous defendants go free," 129 S.Ct. at 701, we find there is "appreciable" deterrence given the importance of a police officer's full and fair disclosure of all material facts when applying for a warrant and the material omissions of fact here. *Id.* at 700.

In sum, the State is the one urging us to apply the good faith exception, and there is simply nothing in the record to support its application.[15] Accordingly, the State has failed to prove that the good faith exception applies,[16] and the evidence seized pursuant to the search warrant must be excluded. The trial court therefore erred in admitting the evidence.

Although we determined above that Hayworth waived her objection to some of this evidence by stating "No objection," we conclude that the admission of this evidence amounts to fundamental error. Given the misleading statements in Detective Southerland's affidavit and the police's utter lack of corroboration of the informant's statements of criminal activity, we find the error to be so prejudicial to the rights of Hayworth as to make a fair trial impossible.

In light of this holding, we do not need to reach Hayworth's other arguments on appeal.

Reversed and remanded.

RILEY, J., and DARDEN, J., concur.

**15.** We acknowledge that this case is a bit unusual given that the trial court never ruled on the good faith exception, finding instead that the totality of the circumstances corroborated the informant's statements, a ruling which we reversed above. In addition, it appears that more evidence came out during Josh's suppression hearing.

**16.** The State has also not satisfied Indiana's good faith exception, Indiana Code § 35–37–4–5.