## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 29 2019, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth N. McFall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 29, 2019

Court of Appeals Case No.
18A-CR-2322

Appeal from the Perry Circuit
Court

The Honorable Mary Lucille
Goffinet, Judge

The Honorable Karen A. Werner,
Magistrate

Trial Court Cause No.
62C01-1804-F3-325

**Najam, Judge.**

# Statement of the Case

Kenneth N. McFall appeals his convictions following a jury trial for dealing in methamphetamine, as a Level 3 felony; possession of marijuana, as a Class B misdemeanor; and possession of paraphernalia, as a Class C misdemeanor. He presents three issues for our review, which we restate as follows:

1. Whether McFall preserved for appellate review his argument that the trial court erred under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution when it admitted evidence that law enforcement officers had seized pursuant to a search of his residence.

2. Whether the trial court abused its discretion when it did not allow a witness to testify in front of the jury.

3. Whether the trial court abused its discretion when it declined to give a proffered jury instruction.

We affirm.

# Facts and Procedural History

On April 23, 2018, Sergeant Jason Shadwick of the Tell City Police Department applied for a search warrant for McFall's residence. In support of his request for the search warrant, Sergeant Shadwick filed an affidavit of probable cause that stated in part:

> On April 23, 2018[,] Officer Bryan Hammack and Affiant both observed a 2001 tan or grey Chevrolet truck park along Jefferson Street at 747 14th Street. Officer[s] were conducting surveillance

in the area in reference to tips received by citizens of drug dealing from this residence and another nearby residence. In the past, Tell City Police Department has also received information of Kenny McFall dealing in methamphetamine. While conducting surveillance on this residence, Officer Hammack observed Kenny McFall exit his home and go to the vehicle for a short time. Mr. McFall then went back to his residence and the vehicle left the residence. A short time later, Officer Hammack and I conducted a traffic stop on the vehicle in question on Franklin Street after observing the vehicle disregard a stop sign and discovering the vehicle plate was false/fictitious, coming back to a 1996 maroon Dodge.

I then identified the driver as Henry Kellems. Mr. Kellems displayed an unusual level of nervousness. Mr. Kellems also indicated that he didn't have current insurance on the vehicle and his driver status was found to be HTV (Habitual Traffic Violator). During the course of the traffic stop, I deployed my K9 partner, "Piko" to perform a free air sniff of the vehicle. During the free air sniff of the vehicle, K9 "Piko" gave a positive alert of a narcotic odor coming from the vehicle's interior. During a subsequent search of the vehicle, I located a clear plastic bag containing a crystal like substance that appeared to be methamphetamine. That substance also field tested positive for methamphetamine. It should be noted that K9 "Piko" is a certified narcotics detection and police patrol dog.

During an interview with Mr. Kellems, he confirmed that the substance was methamphetamine and that Mr. McFall delivered it to his vehicle when he arrived. Mr. Kellems admitted to getting methamphetamine from Kenny McFall's residence in the past. Mr. Kellems stated that today, he and Kenny made a prior arra[nge]ment by phone that he would trade some sandstones to Kenny for some meth. Mr. Kellems stated the amount wasn't agreed upon prior to meeting Kellems [sic] today. However, Mr.

Kellems did cite other times of trading things to McFall for methamphetamine.

Mr. Kellems admitted that Kenny McFall had provided him with methamphetamine in the past prior to today, as well as today. Mr. Kellems also corroborated Officer Hammack's surveillance of McFall coming out of his residence and delivering the bag of methamphetamine to him (Kellems) in his vehicle.

Appellant's App. Vol. II at 164-65. The trial court granted the search warrant that same day.

[4] Later that evening, officers executed the search warrant. During the search, officers found an Altoids tin that contained a baggie with 7.92 grams of marijuana and rolling papers, an eyeglasses case that contained a corner baggie of methamphetamine that was tied with a blue twist tie and a pipe that had methamphetamine residue in it, an Altoids tin that contained four corner baggies of methamphetamine that were tied with blue twist ties, plastic baggies missing their corners, $658 in cash, and two long guns.

[5] The State charged McFall with two counts of dealing in methamphetamine, as Level 3 felonies (Counts I and II); one count of possession of methamphetamine, as a Level 5 felony (Count III); one count of maintaining a common nuisance, as a Level 6 felony (Count IV); one count of possession of marijuana, as a Class B misdemeanor (Count V); and one count of possession of paraphernalia, as a Class C misdemeanor (Count VI).

[6]     On May 24, McFall filed a motion to suppress any evidence seized during the search of his residence. In that motion, McFall asserted that the search warrant was unlawful because the affidavit for probable cause that Sergeant Shadwick had filed in support of his request for the search warrant contained only untrustworthy information. During the hearing on McFall's motion, McFall specifically asserted that the affidavit in support of the search warrant was based only on hearsay statements and that the affidavit did not contain any information to indicate that the hearsay statements were reliable or credible. The trial court denied McFall's motion.

[7]     The trial court held a jury trial from August 6 through August 8. During the trial, the State called Officer Hammack as a witness and questioned him about the search of McFall's house. Specifically, the State asked Officer Hammack what officers had found during the search, and Officer Hammack stated that "[t]here was marijuana found, and there was methamphetamine found." Tr. Vol. III at 163. At that point, McFall objected. The trial court overruled McFall's objection, but, on McFall's request, the trial court stated that it would show a continuing objection.

[8]     The State moved to admit as evidence photographs that officers had taken at McFall's house. Specifically, the State moved to admit the following: a picture of a baggie of marijuana and rolling papers; a picture of an Altoids tin with marijuana; a picture of an open eyeglasses case that contained a glass pipe and a corner baggie of methamphetamine that was tied with a blue twist tie; a picture of an Altoids tin that contained four corner baggies of

methamphetamine, all of which were tied with blue twist ties; and a picture of a trashcan that contained baggies missing their corners. The trial court asked McFall if he had any objection to the admission of the photographs, and McFall responded, "No, Your Honor." *Id*. at 164.

[9] During his testimony, Officer Hammack testified that the presence of four corner baggies of methamphetamine at McFall's house "indicates . . . that this would be a dealing situation." Tr. Vol. III at 169. He further testified that the presence of baggies with missing corners indicates "that the defendant is dealing in methamphetamine." *Id*. Additionally, Officer Hammack testified that, based on his experience, "[i]t is inconsistent . . . for a user to buy four separate baggies of that nature. It just doesn't happen. It's never happened, that I can recall in my 12 or so years." *Id*. at 178. Rather, he stated that is more common for an individual to get one baggie that contains the amount of methamphetamine that the person had purchased. Further, Officer Hammack testified that he had never seen methamphetamine packaged with blue twist ties, which he testified was "unique." *Id*. at 187. Officer Hammack testified that, after seeing the baggies with blue twist ties in McFall's house, "[i]t further confirmed [his] suspicions that the methamphetamine that Mr. Kellems had in his vehicle," which was also in a baggie tied with a blue twist tie, "came from Mr. McFall's residence." *Id*. at 187.

[10] The State also called Sergeant Shadwick as a witness. Sergeant Shadwick testified that, when he first arrived at McFall's house, McFall told him that "he may have a small amount of methamphetamine in an Altoids container in the

living room." *Id.* at 206. Sergeant Shadwick also testified that a corner baggie tied with a blue twist tie is "not something that [he has] ever seen." *Id.* at 207. The State then moved to admit as evidence the corner baggie of methamphetamine that officers had found in an eyeglasses case during the search of McFall's house. When the trial court asked McFall if he had any objections, he responded: "No objection." *Id.* at 209.

[11] The State also moved to admit as evidence the Altoids tin that contained four corner baggies of methamphetamine. Again, when asked if he had any objections to the admission of that evidence, McFall stated: "No objection." *Id.* at 212. And when the State moved to admit the four corner baggies of methamphetamine, he again stated that he had no objection. Sergeant Shadwick testified that, based on his training, having four baggies of methamphetamine is not indicative of personal use. He further testified that he believed that the baggie of methamphetamine that Kellems had, which was tied with a blue twist tie, "definitely came from" McFall's residence because it matched the four baggies of methamphetamine at McFall's house that were also tied with blue twist ties. *Id.* at 210.

[12] The State then moved to admit as evidence $658 in cash that officers had collected from McFall's residence. McFall again stated that he had no objection. McFall also stated that he had no objection when the State moved to admit as evidence the Altoids tin that contained a baggie of marijuana. McFall again stated the he had no objection when the State moved to admit the baggie of marijuana that officer had seized during the search of his house.

[13] After the State concluded its case-in-chief, McFall presented evidence in his defense. McFall attempted to call Kellems as a witness. Because Kellems had a pending criminal charge against him and because he planned to invoke his right against self-incrimination, the trial court heard arguments from the parties as to whether Kellems should be allowed to testify in the presence of the jury. McFall asserted that, under the Sixth Amendment, he should be allowed to question Kellems in the presence of the jury so that the jury could hear Kellems invoke his Fifth Amendment right. The State responded and stated that it would not be proper for the jury to hear Kellems invoke his right against self-incrimination. The trial court permitted Kellems to testify but only outside the presence of the jury, where he advised the trial court that he would invoke his Fifth Amendment right against self-incrimination.

[14] McFall then testified in his defense. During his testimony, he admitted that he had possessed the marijuana and methamphetamine. He further testified that he did not sell the methamphetamine to Kellems but, rather, that Kellems had given him the methamphetamine in exchange for work that he had done for Kellems.

[15] At the conclusion of the parties' presentation of evidence, McFall proposed the following jury instruction:

> Because possession with intent to deliver is a mental state, it can be established only by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn therefrom. Circumstantial evidence of intent may support a conviction. Possession of a large amount of

narcotic substance is circumstantial evidence of the intent to deliver. The more narcotics a person possesses, the stronger the inference that he intended to deliver it rather than consume it personally.

Tr. Vol. IV at 43. The State objected on the ground that the instruction was misleading. The trial court declined to give McFall's proffered jury instruction.

[16] At the conclusion of the trial, the jury found McFall guilty as charged, and the trial court entered judgment of conviction on all six counts. The trial court then held a sentencing hearing on August 28. At the hearing, the court vacated McFall's convictions on Counts II, III, and IV "for double jeopardy purposes." *Id*. at 73. The court sentenced McFall to an aggregate term of eight years in the Department of Correction. This appeal ensued.

# Discussion and Decision

### *Issue One: Admission of Evidence*

[17] McFall first contends that the trial court erred under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution when it admitted as evidence items law enforcement officers had seized during the search of his residence. McFall's arguments that the search of his residence violated his Fourth Amendment and Article 1, Section 11 rights raise "questions of law that we review *de novo*." *Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017) (quotation marks omitted), *trans. denied*.

[18] On appeal, McFall contends that the search of his house was illegal "because the search warrant was not supported by probable cause[.]" Appellant's Br. at 19. Specifically, McFall asserts that the search was improper because the affidavit for probable cause only contained "classic hearsay statements" and because the affidavit "contain[ed] no information corroborating" those statements." *Id.* at 22, 23. But we need not address whether there was probable cause to issue the search warrant because we agree with the State that McFall has failed to preserve for our review the question of the admissibility of the evidence obtained during the search.

[19] During his trial, McFall requested, and the trial court granted, a continuing objection to the admission of any evidence that law enforcement officers had seized during the search of his residence. It is well settled that "Indiana recognizes continuing objections." *Hayworth v. State*, 904 N.E.2d 684, 691 (Ind. Ct. App. 2009). That is because "continuing objections serve a useful purpose in trials. That is, they avoid the futility of and waste of time inherent in requiring repetition of the same unsuccessful objection each time evidence of a given character is offered." *Id.* at 692.

[20] However, while continuing objections are useful, "there are dangers to using continuing objections." *Id.* For example, in *Hayworth*, police officers obtained a warrant to search Hayworth's residence. During the search, officers found guns, methamphetamine, and numerous items associated with the manufacture of methamphetamine. *Id.* at 688. Prior to trial, Hayworth filed a motion to

suppress all evidence seized during the execution of the search warrant. *Id*. Following a hearing, the trial court denied Hayworth's motion. *Id*. at 689.

[21] During Hayworth's ensuing jury trial, the State moved to admit as evidence the items seized during the search. *Id*. at 690. Hayworth affirmatively stated that she did not object to the admission of a photograph of lithium, which an officer had testified was the main ingredient in methamphetamine. The State then attempted to introduce as evidence a methamphetamine shopping list. At that point, Hayworth lodged a continuing objection to all evidence seized from her house, which the trial court overruled. *Id*. However, Hayworth affirmatively stated that she had no objection when the State subsequently moved to admit the following specific evidence that had been seized from her house: a close-up photograph of firearms, the firearms, glass jars and a grinder, a photograph of a propane tank with anhydrous ammonia, a photograph of a reaction vessel, a sample taken from the reaction vessel, a photograph of another tank that contained anhydrous ammonia, a photograph of lithium battery packaging, and a methamphetamine shopping list. *Id*. at 691-92.

[22] Hayworth appealed her convictions and asserted that the trial court had erred when it admitted as evidence the items seized from her house. On appeal, this Court acknowledged that Hayworth had filed a continuing objection to the admission of evidence obtained during the search of her house. But this Court stated that, after she had lodged her continuing objection, the proper procedure

> would have been for Hayworth to have remained silent when the
> State introduced those various exhibits. But Hayworth did much

more than that. Instead, she affirmatively said, "No objection." This was confusing to the trial court, the State, and now us, the reviewing court, leaving us to speculate as to why she bounced back and forth between continuing objection and no objection.

*Id*. at 693-94. Further, on appeal, Hayworth "assert[ed] that 'No objection' really meant 'no objection *other than the continuing objection*.'" *Id*. at 694. But this Court declined to "read 'No objection,' a simple and powerful two-word phrase, to have such a meaning." *Id*. Accordingly, despite her continuing objection, because Hayworth had explicitly stated that she had no objection to the admission of the vast majority of the evidence against her, this Court held that she had waived her objection to the admission of that evidence. *Id*.

[23] Similarly, here, McFall requested, and the trial court granted, a continuing objection to the admission of evidence that officers had seized during the search of his residence. Because the trial court permitted his continuing objection, the proper procedure upon the State's request to admit the specific items of evidence was for McFall to remain silent or to state that he had no objection other than the continuing objection. But McFall did not do that. Instead, McFall affirmatively stated that he had no objection to the admission of the following evidence seized from his house: numerous pictures of marijuana and methamphetamine, a picture of baggies missing their corners, several corner baggies of methamphetamine, $658 in cash, and two long guns. In essence, McFall stated that he had no objection to almost all of the evidence against

him.  McFall has therefore waived his objection to the admission of the evidence seized during the execution of the search warrant.[1]  *See id*.

### Issue Two:  Kellems' Testimony

McFall next contends that the trial court abused its discretion when it did not allow Kellems to testify in front of the jury.  As the Indiana Supreme Court has stated:

> Generally, a trial court's ruling on the admission of evidence is accorded "a great deal of deference" on appeal.  *Tynes v. State*, 650 N.E.2d 685, 687 (Ind. 1995).  "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion" and only reverse "if a ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'"  *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind .2013)).

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015).

McFall specifically contends that the trial court abused its discretion when it did not allow Kellems to invoke his right against self-incrimination in front of the jury because it was part of McFall's "reasonable defense strategy" and because it would "bolster his claim that Kellems was the actual perpetrator of the dealing offense."  Appellant's Br. at 37.  However, our Supreme Court has held

---

[1] McFall makes no argument that the admission of the evidence seized from his house constituted fundamental error.  Indeed, McFall does not acknowledge that he affirmatively stated that he had no objection to the admission of any of the evidence.

that "defendants do not have a right to force a witness to invoke the Fifth Amendment privilege before the jury." *Stephenson v. State*, 864 N.E.2d 1022, 1047 (Ind. 2007).

[26] McFall acknowledges that our Supreme Court's holding in *Stephenson* is "inconsistent" with his argument. Appellant's Br. at 37. But he also asserts that the holding in *Stephenson* is "also completely inconsistent" with our Supreme Court's holding in *Johnson v. State*. *Id*. In *Johnson*, which was an appeal from the denial of a petition for post-conviction relief, the Indiana Supreme Court held that Johnson's attorney had not rendered ineffective assistance of counsel for failing to request an immediate limiting instruction after Johnson's accomplice invoked his Fifth Amendment right in the presence of the jury. 719 N.E.2d 812, 815 (Ind. 1999). That Court further held that the actions of Johnson's attorney of pointing out to the jury that Johnson's accomplice had refused to testify "could represent a reasonable trial strategy to . . . bolster the defendant's theory" that the accomplice had committed the crime instead of Johnson. *Id*.

[27] Contrary to McFall's assertions, the Supreme Court in *Johnson* did *not* hold that a defendant has a right under the Sixth Amendment to force a witness to invoke his right against self-incrimination in front of the jury. Instead, that Court simply held that, if a witness does invoke that right, it was a reasonable trial

strategy for the defendant's attorney to use that fact to bolster his defense. Accordingly, McFall's reliance on *Johnson* is misplaced.[2]

[28] As discussed above, the Court in *Stephenson* stated that a defendant does not have the right to force a witness to invoke the Fifth Amendment in front of the jury. *See Stephenson*, 864 N.E.2d at 1047. Because McFall did not have the right to call Kellems as a witness for the sole purpose of having Kellems invoke his Fifth Amendment right in front of the jury, we cannot say that the trial court abused its discretion when it did not allow Kellems to testify in front of the jury.

### Issue Three: Jury Instruction

[29] Finally, McFall asserts that the trial court abused its discretion when it failed to tender his proffered jury instruction. Our Supreme Court has set out our standard of review.

> "The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse." *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012). To determine whether a jury instruction was properly refused, we consider: "(1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *Lampkins v. State*, 778 N.E.2d 1248, 1253 (Ind. 2002). In doing so, "we

---

[2] McFall also asserts that, "[t]o the extent that there is any conflict between *Johnson* and *Stephenson*, this Court should adopt the rationale in *Johnson*." Appellant's Br. at 37. However, it is well settled that "we are bound to follow the court's most recent pronouncement on the issue." *Howse v. State*, 627 N.E.2d 441, 444 (Ind. Ct. App. 1999). Accordingly, even if the two cases were in conflict, we would be required to follow the Supreme Court's decision in *Stephenson* as it was decided more than seven years after *Johnson*.

consider the instructions 'as a whole and in reference to each other' and do not reverse the trial court 'for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case.'" *Helsley v. State*, 809 N.E.2d 292, 303 (Ind. 2004) (quoting *Carter v. State*, 766 N.E.2d 377, 382 (Ind. 2002)).

*McCowan v. State*, 27 N.E.3d 760, 763-64 (Ind. 2015).

[30] McFall's tendered jury instruction stated as follows:

> Because possession with intent to deliver is a mental state, it can be established only by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn therefrom. Circumstantial evidence of intent may support a conviction. Possession of a large amount of narcotic substance is circumstantial evidence of the intent to deliver. The more narcotics a person possesses, the stronger the inference that he intended to deliver it rather than consume it personally.

Tr. Vol. IV at 43. On appeal, McFall contends that the trial court abused its discretion when it declined to give that jury instruction because it is an accurate statement of the law, the evidence and his defense supported giving the instruction, and no other instruction covered the substance of that instruction.

[31] McFall is correct that his proffered jury instruction is technically a correct statement of the law. *See Richardson v. State*, 856 N.E.2d 1222, 1227 (Ind. Ct. App. 2006). However, "[i]nstructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved." *Ludy*, 784 N.E.2d at 461. Here, McFall's instruction

emphasized one piece of evidence, namely the amount of methamphetamine that McFall possessed. However, the State also presented evidence to demonstrate McFall's intent to deliver in addition to the amount of methamphetamine that was in his possession. Specifically, the State presented evidence that McFall had four individual baggies of methamphetamine instead of one baggie. Both Sergeant Shadwick and Officer Hammack testified that the possession of four baggies indicated that it "would be a dealing situation." Tr. Vol. III at 169. Further, the State presented as evidence baggies from McFall's residence that were missing their corners, which both officers again testified was indicative of dealing. Because McFall's proffered jury instruction improperly emphasized one particular piece of evidence, we cannot say that the trial court abused its discretion when it declined to give that instruction.

## *Conclusion*

In sum, we hold that McFall has waived any challenge to the admission of evidence that officers obtained during the search of his residence despite his continuing objection because he affirmatively stated that he had no objection to the admission of almost all of the evidence. We further hold that the trial court did not abuse its discretion when it did not allow Kellems to testify in front of the jury or when it declined to give McFall's proffered jury instruction. We therefore affirm McFall's convictions.

Affirmed.

Pyle, J., and Altice, J., concur.