Little Bear SULLIVAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A05–0009–CR–397.

Court of Appeals of Indiana.

Feb. 26, 2001.

Publication Ordered April 25, 2001.

862

Conor O'Daniel, Evansville, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Little Bear Sullivan ("Sullivan") appeals from his convictions for manufacturing a schedule II controlled substance,[1] a Class B felony, possession of a schedule II controlled substance,[2] a

Class D felony, and criminal recklessness,[3] a Class B misdemeanor. We affirm.

### Issues

Sullivan raises four issues for our review, which we consolidate and restate as follows:

I. whether the trial court erred in denying his motion to suppress;

II. whether the trial court erred in denying his motion to discharge the panel of jurors; and

III. whether the trial court erred in sentencing him.

### Facts and Procedural History

On March 2, 2000, police officers responded to a complaint that Sullivan's house had a strong odor of anhydrous ammonia and possibly contained a narcotics lab. Evansville police officers Michael Jolly ("Jolly") and Tony Mayhew ("Mayhew") went to Sullivan's house and saw a clear carafe and a fanny pack on the front porch. The carafe had a strong odor and contained a substance that was separated into three layers: a milky liquid with a white pill dough in the bottom, a greenish-clear liquid, and a yellow oily layer on top. The officers knocked on the door, and Sullivan answered after approximately forty-five seconds. Sullivan refused to allow the officers to enter his house, but he did speak with them on the front porch. Sullivan permitted the officers to look in the fanny pack that was lying on the porch, which contained tubing with white crystalline residue and valves.

The officers then called Officer Jerry Tooley ("Tooley"), a narcotics detective, to the scene. Tooley spoke with Sullivan and asked for consent to enter the residence, which Sullivan refused. Sullivan informed

1. *See* IND. CODE § 35–48–4–2(a)(2).

2. *See id.* § 35–48–4–7(a).

3. *See id.* § 35–42–2–2(b)(1).

the officers that there was no one in the house and that he had some fire extinguishers and propane tanks in the house. After failing to obtain consent to enter Sullivan's home, Tooley and the other officers entered the home to perform a protective sweep, but were unable to complete the sweep because the smell of ammonia was too strong. While Tooley was getting a search warrant, Officer Chris Pugh ("Pugh") arrived at the scene and performed a field test on the contents of the carafe. The field test indicated that the substance was methamphetamine. Pugh informed Tooley of the results of the field test by telephone, and Tooley included that information in the affidavit for the search warrant. Tooley returned to the house with a search warrant and protective gear.

Upon searching the house, the officers found several items related to the manufacture of methamphetamine including a propane tank, fire extinguisher canisters, respirators, plastic scales, filters, pseudoephedrine, and a recipe for making methamphetamine. Many of the items had a white residue on them, which was later found to contain methamphetamine.

Sullivan was arrested and charged with manufacturing a schedule II controlled substance, possession of a schedule II controlled substance, and criminal recklessness. On May 1, 2000, the court held a hearing on Sullivan's motion to suppress in which he sought to suppress the evidence found in plain view outside the house and the evidence obtained pursuant to the search warrant. The trial court denied the motion. A jury convicted Sullivan on all charges, and the trial court sentenced him to a concurrent sentence of fifteen years.

## Discussion and Decision

### I. Motion to Suppress

Sullivan contends that the trial court erred in denying his motion to suppress.

In particular, Sullivan asserts that the warrantless entry into his home was illegal and therefore tainted the search warrant and that the a search warrant was required for the carafe because it was not in plain view.

■ Initially, the State asserts that Sullivan has waived any error in denying the motion to suppress for failing to object to the admission of evidence at trial. Specifically, the State argues that a continuing objection is insufficient to preserve error for appeal. *See Carter v. State*, 634 N.E.2d 830, 833 (Ind.Ct.App.1994) (concluding that where defendant did not object at trial to admission of evidence, defendant's continuing objection noted at pre-trial hearing on motion to suppress was insufficient to preserve error). The trial court held a hearing on Sullivan's motion to suppress one week before trial. The trial court denied the motion. When the evidence that Sullivan sought to suppress was presented at trial, Sullivan objected by incorporating the objections from the previous hearing. The court noted Sullivan's request for a continuing objection. The case at bar is similar to *Edwards v. State*, 682 N.E.2d 800, 802 (Ind.Ct.App.1997), where the court concluded that when the record demonstrates that the continuing objection fully and clearly advised the trial court of the specific grounds for the objection, the defendant has preserved the error for appeal. Here, Sullivan objected at trial, and the record includes a transcript of the suppression hearing. The record reveals that the trial court was fully apprised of the grounds for Sullivan's objection, and therefore, we address Sullivan's claim on the merits.

■ The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion. *Johnson v. State*, 710 N.E.2d

925, 927 (Ind.Ct.App.1999). Upon review of a trial court's ruling on a motion to suppress evidence, we will examine the evidence most favorable to the ruling, together with any uncontradicted evidence. *Callahan v. State,* 719 N.E.2d 430, 434 (Ind.Ct.App.1999). We will neither reweigh the evidence nor judge witness credibility. *Johnson,* 710 N.E.2d at 927.

## A.  Search Pursuant to the Warrant Obtained After the Warrantless Entry

■ Sullivan asserts that the search warrant was the product of the officers' illegal warrantless entry[4] into his home and was therefore invalid. The State argues that the search warrant was based on independent evidence sufficient to show probable cause and to justify the issuance of the search warrant. Tooley wrote a probable cause affidavit in order to obtain a search warrant. The probable cause affidavit read as follows:

During the evening hours of March 2, 2000, Evansville Police Department Motor Patrol Officers Jolley [*sic*] and Mayhew went to the above described residence at 2685 W. Maryland to investigate a report that illegal drugs were being produced at the residence. The officers knocked on the door and spoke with Little Bear Sullivan who was identified as the resident of 2685 W. Maryland. The officers identified themselves and advised Sullivan of the purpose of their visit and asked to come inside the residence. Sullivan denied the officers' request to enter the residence but stated that he would talk to the officers outside. Sullivan left the residence shutting the door behind him. While speaking with Sullivan at the front door of the residence, [t]he officers observed on the front porch of the residence a wine carafe containing a milky white liquid and a fanny pack. The officer's [*sic*] asked Sullivan what was in the fanny pack and he told them that they could look inside the fanny pack. Inside the fanny pack, the officers found a length of clear plastic tubing. The officers could see a white crystaline substance near the end of the tubing. Believing that the white milky substance in the carafe and the length of tubing with the crystaline substance was associated with the illegal manufacture of methamphetamine, the motor patrol officers requested the assistance of your affiant.

Your affiant arrived at the residence and spoke with Sullivan outside the residence. Sullivan advised your affiant that he had some tanks and fire extinguishers in the residence that he was trying to get rid of but would not give consent to search the residence. Your affiant asked Sullivan if the tanks contained anhydrous ammonia, but Sullivan refused to answer. Sullivan indicated that he could not be cooperative because threats had been made against his family. A small sample was taken from the white milky solution in the carafe. This sample was dried and field tested and a positive reaction for the presence of methamphetamine was obtained. Your affiant has received extensive training in the detection and investigation of illegal drug labs and has participated in the investigation of numerous methamphetamine labs. Your affiant is aware that in the final stages of the manufacture of methamphetamine, a length of plastic tubing is commonly used to pass hydro-

---

4. We need not determine whether the warrantless entry was a valid protective sweep given our conclusion that the search warrant was not based on any information obtained as a result of the warrantless entry.

gen chloride gas into a solution containing the methamphetamine. This causes the methamphetamine to crystalize and come out of solution. A white crystaline residue is commonly found on the tubing used for this purpose. Sullivan advised your affiant that he had purchased the pickup truck. Sullivan seemed anxious for your affiant to look into the truck, telling him several times to go look into the truck. Sullivan refused to execute a consent to search form so the residence and truck [were] secured pending the issuance of search warrant.

Record at 87. After obtaining the warrant, the officers returned to Sullivan's home and conducted a thorough search. As noted *supra*, the police discovered several items relating to the manufacture of methamphetamine.

■ The state and federal constitutions guarantee that a court will not issue a search warrant without probable cause. U.S. Const. amend. IV; Ind. Const. art. 1, § 11. "Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Esquerdo v. State*, 640 N.E.2d 1023, 1029 (Ind.1994). "The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom." *Utley v. State*, 589 N.E.2d 232, 236 (Ind. 1992), *cert. denied*, 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993).

The probable cause affidavit makes no reference to any evidence found in Sullivan's house during the initial warrantless entry. Indeed, the affidavit mentioned only Sullivan's statements and the methamphetamine found in the carafe. The officers possessed evidence of the commission of a felony, manufacturing methamphetamine. Based on the information pre-sented in the affidavit, it was reasonable for the judge to have found probable cause to issue the search warrant. The present case is substantially similar to *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The question in *Segura* was whether the challenged evidence, which had been obtained pursuant to a search warrant, was uncovered by exploitation of the initial illegal warrantless entry and search or instead by another means sufficiently distinguishable from the bad actions to be purged of the primary taint. The *Segura* court held that the search was made pursuant to a properly issued warrant:

> None of the information on which the warrant was secured was derived from or related in any way to the initial entry into [Segura's] apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant.

*Segura*, 468 U.S. at 814, 104 S.Ct. 3380. Likewise here, any information obtained during the warrantless entry was neither needed nor used by Tooley to secure the warrant. Thus, "[t]he valid warrant search was a 'means sufficiently distinguishable' to purge the evidence of any 'taint' arising from the entry." *Id.* The legality of the initial entry is therefore entirely irrelevant.

**B.   Search and Seizure of Carafe**

Sullivan also asserts error in the trial court's denial of his motion to suppress evidence obtained pursuant to a search of a carafe prior to obtaining a warrant. The State argues that the carafe was in plain view and therefore a warrant was not required.

Under the federal constitution,[5] searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted). The trial court found that the warrantless search was justified based on the plain view doctrine.

Three conditions must exist to justify the warrantless seizure of evidence under this doctrine: (1) "the officer [must] not have violate[d] the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) the "incriminating character" of the evidence must be "immediately apparent"; and (3) the officer must "have a lawful right of access to the object itself."

*Middleton v. State,* 714 N.E.2d 1099, 1101 (Ind.1999) (quoting *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)) (alterations in original).

Sullivan concedes that the State has met prongs one and three, but contends that the State failed to meet prong two, that the incriminating character of the evidence was immediately apparent. "The 'immediately apparent' prong requires that law enforcement officials have probable cause to believe the evidence will prove useful in solving a crime." *Taylor v. State,* 659 N.E.2d 535, 538 (Ind.1995). This does not require, however, that the officer "must 'know' that the item is evidence of criminal behavior." *Id.* at 539. Rather, "[p]robable cause requires only that the information available to the officer would lead a person of reasonable caution to believe the

items could be useful as evidence of a crime." *Id.*

■ Based on the officers' testimony, the nature of the substance contained in the carafe was immediately apparent. Jolly testified that he had seen "pill dough" similar to that at the bottom of the carafe in other methamphetamine labs. Mayhew testified that he could smell ether coming from the carafe and that he had also seen the pill dough before in other labs. Finally, Tooley testified that he had seen a similar three-layer separation at a DEA lab school in the context of making methamphetamine. Hence, the incriminating character of the substance within the carafe was immediately apparent to the officers at the scene. That the officers performed a field test of the substance to confirm that it was methamphetamine does not mean that the criminal nature of the substance was not immediately apparent. *See Taylor,* 659 N.E.2d at 539 (stating that officers do not have to *know* that the substance is evidence of criminal behavior). We find no error in the trial court's denial of Sullivan's motion to suppress.

## II. Motion to Discharge Jury

Second, Sullivan contends that the trial court erred in denying his motion to discharge the panel of jurors. Specifically, Sullivan argues that a prospective juror's statement during voir dire that "she had particularized knowledge of the events surrounding the charge and that based on her knowledge, she had formed an opinion of guilt" tainted the panel of jurors and, as a result, denied him a fair trial. Appellant's Brief at 12.

■ Our courts have repeatedly held that "trial judges have broad discretion in regulating the form and substance of voir dire." *Bergmann v. State,* 486 N.E.2d

**5.** Sullivan does not make a separate Indiana    constitutional argument.

653, 656 (Ind.Ct.App.1985). "The decision of the trial court will be reversed only if there is a showing of a manifest abuse of discretion and a denial of a fair trial." *Logan v. State*, 729 N.E.2d 125, 133 (Ind. 2000). During voir dire, the following colloquy occurred:

DEFT. COUNSEL: Mrs. Daum I notice that you live there on Maryland Street. There will be evidence that will indicate that this took place on Maryland Street. Ah, about ten houses down from you, do you recall the incident about a couple of months ago in which there was a big to do over there?

JUROR DAUM: I've never seen the gentleman before that I remember, yes.

DEFT. COUNSEL: Okay, do you think that that is ah, something that may not make you a best Juror in this case?

JUROR DAUM: All fairness to him, yes.

Record at 108. The State questioned the juror as follows:

STATE: May I follow up. Ahm, Mrs. Daum, without telling me what you've heard, have you heard anything about what happened ah, ah, a block or so down from your house?

JUROR DAUM: Ah, it was close enough that we saw the Police activity.

STATE: Okay.

JUROR DAUM: And I have a seventeen year old living with me so that kind of sways me a little.

STATE: Okay, have you made up your mind at this point in time whether this gentleman is guilty or innocent?

JUROR DAUM: I'm afraid so, because I'm real close neighbors with the one that lived in right back of him.

STATE: Okay, okay, that's ... that's fine, that's fine.

COURT: Okay, well, we .. we'll ... we'll ... we need to stop right there, thank you.

Record at 111–12. The juror was excused. Sullivan moved to discharge the panel based on Daum's statements. The trial court admonished the remaining members of the panel to disregard Daum's statements and individually questioned the jurors that had already been accepted and asked them if they could ignore Daum's statements in reaching a verdict. The jurors indicated that they could, and the trial court denied the motion.

We find no error. Daum did not state any facts relevant to the offenses charged. She merely indicated that she had formed an opinion as to Sullivan's guilt without articulating whether her opinion was one of guilt or innocence. Moreover, no reversible error will generally be found "where a jury has been admonished to disregard what has occurred or other curative measures have been taken." *Bergmann*, 486 N.E.2d at 656. Indeed, "[t]he admonition is presumed to have cured any error, particularly when the defendant did not object to the admonition." *Id.* Sullivan did not object to the admonition here. The trial court did not err in refusing to discharge the panel.

### III. Sentence

■■■ Finally, Sullivan contends that the trial court erred in sentencing him. Sentencing decisions rest within the sound discretion of the trial court and are reversed only for an abuse of discretion. *Blanche v. State*, 690 N.E.2d 709, 714 (Ind.1998). The trial court's sentencing discretion includes determining which aggravating and mitigating circumstances to consider in sentencing and the weight to accord each of these factors. *Allen v. State*, 719 N.E.2d 815, 817 (Ind.Ct.App. 1999), *trans. denied* (2000).

At the sentencing hearing, the court stated:

> The Court finds as aggravating circumstances, the defendant has significant prior criminal history, to-wit two felony convictions, the defendant has failed under non-penal supervision ah, in the past and is thus clearly in need of ah, correctional treatment best provided by a penal facility. These aggravating circumstances are not weighed ... outweighed by any mitigating circumstances....

Record at 534–35.

■■■ Sullivan contends that the aggravating factors are improper because the trial court failed to support the aggravators with specific facts. First, Sullivan argues that the court's failure to identify the specific felonies renders improper the use of his criminal history as an aggravator. We disagree. The trial court supported the use of Sullivan's criminal history as an aggravator by indicating that Sullivan had been convicted of two felonies. Although the trial court's statement lacks specificity, the record indicates that Sullivan had a criminal history. *See Mundt v. State*, 612 N.E.2d 566, 568–69 (Ind.Ct.App.1993) (concluding that although trial court failed to identify the crimes comprising defendant's criminal history, the record revealed a proper factual predicate and therefore no error in aggravating factor), *trans. denied.* At the sentencing hearing, defense counsel addressed Sullivan's burglary conviction. In addition, the State addressed Sullivan's other felony conviction for which he received a suspended sentence that was later revoked. Thus, we find no error in the use of Sullivan's criminal history as an aggravating factor.

■■■ Second, Sullivan argues that the court failed to identify reasons that he was in need of corrective treatment that could best be provided by a penal facility. *See*

*Hollins v. State*, 679 N.E.2d 1305, 1308 (Ind.1997) (noting that "the trial court must provide a specific or individualized statement of the reason why this defendant was in need of correctional and rehabilitative treatment that could best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence term"). We disagree. The trial court specifically stated that previous attempts at non-penal supervision had been unsuccessful. We find no error in this aggravating factor.

We next address Sullivan's argument regarding mitigating circumstances. Sullivan contends that the trial court failed to identify and consider mitigating factors that were supported by the evidence. Specifically, Sullivan asserts the following mitigating circumstances: (1) he suffered from a personality disorder; (2) a sentence in excess of the presumptive would be a hardship on his son; (3) he was active in his church; (4) he was a productive member of society; and (5) his prior convictions were more than ten years old.

■■■ "While a trial court's failure to find mitigating circumstances clearly supported by the record may imply that they were overlooked and not properly considered, the sentencing judge is not obligated to credit or weigh such evidence the same as the defendant does, nor must the judge necessarily explain the lack of a mitigation finding." *Prowell v. State*, 687 N.E.2d 563, 567 (Ind.1997), *cert. denied*, 525 U.S. 841, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998); *see also Hampton v. State*, 719 N.E.2d 803, 808 (Ind.1999) ("[A] trial judge is not required to accept as true all of the mitigating factors presented by the defendant."). The trial court did not abuse its discretion by failing to find Sullivan's alleged personality disorder a mitigating circumstance. Indeed, Sullivan conceded that the pre-

sentence investigation report indicated that he had never been diagnosed with a personality disorder. Record at 530. As for Sullivan's alleged reformation, productive membership in society, hardship on his son, and the age of his convictions, it was within the court's discretion to weigh the evidence regarding these factors. We conclude that the trial court adequately stated the reasons supporting Sullivan's sentence. "The trial court's statement that the aggravating circumstances outweighed the mitigating circumstances shows that the court considered [Sullivan's] mitigating evidence and did not deem it to be significant." *Miller v. State,* 634 N.E.2d 57, 65 (Ind.Ct.App.1994). Consequently, the court had no obligation to identify or balance the mitigating factors claimed by Sullivan.

Affirmed.

### ORDER

This court having heretofore handed down its opinion in this appeal on February 26, 2001, marked Memorandum Decision, Not for Publication; and,

The Appellee, by counsel, having thereafter filed its Motion to Publish, alleging therein that this Court's Memorandum Decision applies and explains an important aspect of search and seizure law, namely, that a search may be legal, despite a warrantless entry having occurred, when the search warrant is based on means sufficiently distinguishable from the warrantless entry and further alleging that because the issue concerns search and seizure law, there is a distinct possibility that the issue may arise again and that publication of this Court's decision will provide Indiana law explaining the legality of searches under similar circumstances, which said Motion is in the following words and figures, to-wit:

(H.I.)

And the court, having examined said Motion and being duly advised, now finds that the same should be granted and that this Court's opinion in this matter heretofore handed down in this cause on February 26, 2001, as a Memorandum Decision, should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The Appellee's Motion for Publish is granted and this Court's opinion heretofore handed down in this cause on February 26, 2001, marked "Not for Publication" in now ordered published.

BAKER and BARNES, JJ., concur.