

**FILED**

Jul 31 2017, 6:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery A. Earl
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Denise A. Robinson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.G.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 31, 2017<br><br>Court of Appeals Case No.<br>32A01-1611-JV-2590<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Karen M. Love,<br>Judge<br><br>Trial Court Cause No.<br>32D03-1610-JD-250 |

**May, Judge.**

[1]     K.G. appeals his adjudication as a delinquent child for having committed acts that, if committed by an adult, would be Class A misdemeanor carrying a

handgun without a license,[1] Class C misdemeanor illegal possession of an alcoholic beverage,[2] and Class C misdemeanor possession of paraphernalia.[3] K.G. asserts the evidence supporting his adjudications was inadmissible because it was collected in violation of his constitutional rights to be free of illegal search and seizure. We reverse.

## Facts and Procedural History

[2] During the late morning of October 1, 2016, Lieutenant Robert Paris ("Lt. Paris") of the Avon Police Department received a dispatch regarding a suspicious male who was approaching females in a Kroger parking lot and asking to use their cell phones. The dispatch also stated the male had a backpack and might be a runaway. Lt. Paris was given a physical description of the male and, upon his arrival at the store, saw a male who fit that description walking in front of the store. Lt. Paris saw the male—later identified as K.G.— was carrying two backpacks, and the lieutenant suspected K.G. was a runaway.

[3] Lt. Paris got out of his police car and told K.G. to stop. Lt. Paris then asked K.G. his age and whether he was a runaway. K.G. responded he was "almost seventeen" and was not a runaway. (Tr. Vol. 2 at 12.) Lt. Paris then asked who the backpacks belonged to, and K.G. reported the backpacks belonged to

---

[1] Ind. Code § 35-47-2-1.

[2] Ind. Code § 7.1-5-7-7(a)(1).

[3] Ind. Code § 35-48-4-8.3(b)(1).

someone else. When Lt. Paris asked for that friend's name, K.G. reported "Jacob" but could not provide Jacob's last name, address, or phone number. (*Id.* at 13.) Lt. Paris then "decided to pat [K.G.] down for [the lieutenant's] own safety." (*Id.*)

[4] During the pat-down, Lt. Paris "immediately located a – what ended up being a box of ammunition in [K.G.'s] left front pants pocket." (*Id.* at 14.) Lt. Paris handcuffed K.G. and removed the ammunition from his pocket. Lt. Paris then searched K.G.'s backpacks and found a loaded handgun that contained the same type of ammunition found in K.G.'s pocket, two soda bottles filled with alcohol, and a glass pipe with burnt marijuana residue.

[5] Thereafter, the State filed a petition alleging K.G. was a delinquent child for committing acts that, if committed by an adult, would have been Class A misdemeanor carrying a handgun without a license, Class C misdemeanor illegal possession of an alcoholic beverage, and Class C misdemeanor possession of paraphernalia.

[6] On October 24, 2016, the day of the fact-finding hearing, K.G. filed a motion to suppress the evidence found during the pat-down and search of his backpacks (*i.e.*, the box of ammunition, handgun, alcohol, and glass pipe). K.G. argued, in relevant part, that Lt. Paris's search of K.G. and his backpacks was a warrantless search in violation of K.G.'s constitutional rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the

Indiana Constitution.[4]  Before the fact-finding hearing, the court heard testimony from Lt. Paris and denied K.G.'s motion to suppress.

[7]   The court continued immediately into the fact-finding hearing, incorporated Lt. Paris's testimony from the suppression hearing, and overruled K.G.'s renewed objection to the ammunition, gun, alcohol, and glass pipe.  After hearing additional testimony, the juvenile court entered true findings that K.G. was a delinquent child for the offenses of carrying a handgun without a license, illegal possession of an alcoholic beverage, and possession of paraphernalia, and it ordered K.G. placed in the Indiana Department of Correction.

# Discussion and Decision

[8]   K.G. argues the juvenile court abused its discretion when it denied his motion to suppress all the evidence collected by Lt. Paris and admitted that evidence at his delinquency hearing.[5]  Because K.G. appeals following his delinquency hearing, the issue on appeal is whether the juvenile court abused its discretion

---

[4] In his motion, K.G. also argued "any and all statements" should be suppressed because he had not been provided with an opportunity for meaningful consultation under Indiana Code Section 31-32-5-1. (App. Vol. 2 at 15.)  K.G. makes no corresponding argument on appeal.

[5] The hearing on K.G.'s motion to suppress immediately preceded the hearing on the petition alleging K.G. was a delinquent.  At the end of the hearing on the motion to suppress, the court denied the motion and said: "Continue on then with the fact finding." (Tr. Vol. 2 at 36.)  The parties agreed to incorporate into the trial record the testimony Lt. Paris had given in the suppression hearing, and then K.G.'s counsel said: "And I guess Judge for the record since we're technically at the trial I renew my motion to suppress objection." (*Id.* at 37.)  The Court responded: "Yeah I'm denying that." (*Id.*)  K.G.'s renewal of that suppression argument at the trial on the merits preserved for appeal any error in the trial court's denial of K.G.'s motion to suppress.  *See* Ind. Evidence Rule 103(b) (2014) ("Once the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

by admitting the evidence during the fact-finding hearing. *See A.M. v. State*, 891 N.E.2d 146, 148 (Ind. Ct. App. 2008), *trans. denied*.

[9] The decision whether to admit evidence falls within the sound discretion of the trial court, and we review the decision only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*. As we conduct our review, we may not reweigh the evidence, but we consider both the conflicting evidence, which we accept in the light most favorable to the trial court's decision, and any "uncontradicted evidence to the contrary." *Pinner v. State*, 74 N.E.3d 226, 229 (Ind. 2017). "[W]hen an appellant's challenge . . . is premised on a claimed constitutional violation, we review the issue de novo because it raises a question of law." *Id*.

[10] Specifically, K.G. argues this evidence was inadmissible because the searches violated his rights under the Fourth Amendment to the United States Constitution.[6] The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable search and seizures." For a search to comply with that guarantee of reasonableness, it generally must be conducted with a warrant supported by probable cause. *Pinner*, 74 N.E.3d at

---

[6] K.G. also asserts the search violated his right to be free from unreasonable search and seizure under Article 1, Section 11 of the Indiana Constitution. Because we conclude the frisk of K.G. violated the federal constitution, we need not address his claims under the Indiana Constitution. *See Pinner*, 74 N.E.3d at 229 n.1 (declining to review under state constitution after concluding federal constitution was violated).

229. When a seizure or search occurs without a warrant, the State has "the burden to prove that an exception to the warrant requirement existed at the time." *Mullen v. State*, 55 N.E.3d 822, 827 (Ind. Ct. App. 2016) (quoting *Brooks v. State*, 934 N.E.2d 1234, 1240 (Ind. Ct. App. 2010), *reh'g denied, trans. denied*).

[11]  One exception to the warrant requirement is the *Terry* stop, which permits police officers to stop and briefly detain an individual if the officer has a reasonable and articulable suspicion that criminal activity may be afoot.[7] *Terry v. Ohio*, 392 U.S. 1 (1968). The dispatch Lt. Paris received, combined with his observation of K.G. in the expected location, provided reasonable suspicion for Lt. Paris to stop K.G. briefly to determine whether K.G. was a runaway or needed assistance calling for help. However, Lt. Paris did not simply stop K.G. and talk to him, Lt. Paris also conducted a pat-down search of K.G.

> In addition to detainment, *Terry* permits a reasonable search for weapons for the protection of the police officer, where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. Officer safety is of paramount importance. Police officers are daily placed in difficult and dangerous situations, some of which are life threatening. The law has to provide protections for such officers. The officer need not be absolutely certain that the individual is

---

[7] The State asserts on appeal: "With regard to Respondent's Fourth Amendment claim, the initial encounter was consensual as Lt. Paris merely approached Respondent asking him what he was doing. There was no display of force, nor any indication to Respondent that negative consequences would follow if he failed to respond." (Br. of Appellee at 8.) As Lt. Paris testified he ordered K.G. to stop, (Tr. Vol. 2 at 27) ("he was actually behind me at this point and I had to stop for – and tell him to stop"), we reject the State's suggestion the interaction was consensual.

armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Mullen*, 55 N.E.3d at 830-31.

[12] Thus, the question we face is whether a reasonably prudent person facing the circumstances herein would have been warranted in believing his safety was in danger. Lt. Paris approached a teenager on the sidewalk in front of Kroger in Avon, Indiana, in the late morning on a Sunday in October. When Lt. Paris stopped K.G., he asked how old K.G. was. K.G. reported he was almost seventeen, and Lt. Paris asked if K.G. was a runaway. K.G. responded "no." (Tr. Vol. 2 at 12.) Lt. Paris then asked if the two backpacks K.G. was carrying belonged to K.G. K.G. reported they belonged to "Jacob." (*Id*. at 13.) When Lt. Paris asked for Jacob's last name, K.G. "couldn't give me a last name so I decided to pat him down for my own safety."[8] (*Id*.)

---

[8] Lt. Paris construed K.G.'s lack of answer as his being "evasive and nervous." (Tr. Vol. 2 at 13.) The State, relying on a 1984 United States Supreme Court case, argues "nervous and evasive behavior is a pertinent factor in determining whether reasonable suspicion exists." (Br. of Appellee at 13, citing *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984).) However, our Indiana Supreme Court recently reiterated: "nervousness is of limited significance when determining reasonable suspicion . . . because it is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity." *Pinner*, 74 N.E.3d at 233 (internal quotations and citations omitted). While evasiveness can combine with other factors to create reasonable concern for the safety of an officer or the public, *see*, *e.g.*, *Scisney v. State*, 55 N.E.3d 321, 325 (Ind. Ct. App. 2016) (pat-down "constitutionally permissible" when Scisney did not respond to a question regarding whether he had any weapons), *trans. denied*, we cannot say K.G.'s evasiveness about the owner of the backpacks, under the specific circumstances that faced Lt. Paris, was sufficient to create reasonable concern for officer safety.

[13] On cross-examination, defense counsel asked Lt. Paris: "What concern for officer safety did you have?" (*Id.* at 24.)

> A     He was in possession of property according to him that did not belong to him, could not give me names of who it belonged to, the fact that he was under the age of 17, and he had ammunition on him I was concerned he might also have a weapon.
>
> Q     But at the time when you patted him down you did not know he had ammunition on him, is that correct?
>
> A     Not until I patted him down, no.

(*Id.*) On re-direct examination, the following dialogue occurred:

> Q     Okay. And so during this interaction with [K.G.] did you become at any point concerned for your safety or the safety of anyone around?
>
> A     Yes.
>
> Q     Okay. And at what point did you put [K.G.] in handcuffs?
>
> A     Pretty much immediately after I found the ammunition in his pocket.

(*Id.* at 28.) Then, on re-cross:

> Q     . . . you were concerned for . . . officer safety . . . is that right?

A       Yes.

Q       When were you concerned for officer safety?  When did
that first become a concern?

A       It's always a concern but when I found ammunition on
him it became paramount at my [sic] point to get him secured.

(*Id*. at 29.)[9]

[14]    None of Lt. Paris's testimony creates particularized reasonable suspicion that Lt. Paris's safety was in danger because of K.G. or that K.G. was "an armed and dangerous individual," *Mullen*, 55 N.E.3d at 831, prior to Lt. Paris finding the ammunition in K.G.'s pocket during the pat-down.  As Lt. Paris needed particularized suspicion *before* he conducted that pat-down, K.G.'s Fourth Amendment right to be free of unreasonable search and seizure was violated by the pat-down, *see Mitchell v. State*, 745 N.E.2d 775, 781 (Ind. 2001) (holding pat-down of properly-stopped citizen violated Fourth Amendment when "the officer's testimony did not express or explain any reasons for his safety concerns" to justify a search), and the juvenile court should have suppressed the evidence collected by Lt. Paris during and following the pat-down.  As such,

---

[9] We note Lt. Paris also testified that he "called for immediate back up," (Tr. Vol. 2 at 30), because K.G. reported Jacob, who owned the backpacks, was still in the area, and Lt. Paris "didn't know if there was a – he had a compatriot that was watching what we were doing." (*Id*. at 30-31.)  However, none of Lt. Paris's testimony explained when Lt. Paris received that information from K.G. or when Lt. Paris called for backup. As the State has "the burden to prove" the admissibility of evidence seized without a warrant, *Mullen*, 55 N.E.3d at 827, we decline to presume Lt. Paris had that information and called for backup prior to his pat-down of K.G.

there was no admissible evidence to support K.G.'s adjudication as a delinquent, and we must reverse that adjudication. *See*, *e.g.*, *L.W. v. State*, 926 N.E.2d 52, 60 (Ind. Ct. App. 2010) (where officer's stop of juvenile was based on conjecture, rather than "specific and articulable facts" objectively implicating the particular juvenile stopped, Fourth Amendment was violated and delinquency adjudications had to be reversed), *reh'g denied*.

# Conclusion

[15] Because the State has not demonstrated that Officer Paris's pat-down of K.G. during the *Terry* stop was supported by particularized reasonable suspicion, the pat-down was improper under the Fourth Amendment. The juvenile court, therefore, should have suppressed the ammunition found during that pat-down and all evidence discovered during the searches that occurred thereafter. Accordingly, we reverse the true findings of delinquency entered against K.G.

[16] Reversed.

Brown, J., and Pyle, J., concur.