

FILED

Mar 18 2026, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Roger Rodriguez, Jr.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

March 18, 2026

Court of Appeals Case No.
25A-CR-623

Appeal from the Madison Circuit Court

The Honorable Angela Warner Sims, Judge

Trial Court Cause No.
48C01-2307-MR-2144

---

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

[1] Roger Rodriguez, Jr. appeals his convictions for murder and Level 3 felony robbery.[1] Rodriguez raises two issues for our review, which we restate as follows:

> 1. Whether Rodriguez waived appellate review of the admission of certain evidence when, despite an appropriate and prior objection, he later informed the court that he had no objection to that evidence.

> 2. Whether the trial court abused its discretion when it instructed the jury on self-defense.

[2] We clarify that, under the current version of Indiana Evidence Rule 103, a defendant preserves a continuing objection to the admission of evidence for appellate review simply by making a timely objection to that evidence during trial, identifying the specific ground for the objection, and receiving the trial court's definitive ruling on the objection on the record at trial.[2] There is no

---

[1] Rodriguez does not specifically appeal his adjudication as a habitual offender.

[2] As explained below, our Supreme Court's January 1, 2014, amendment to Indiana Evidence Rule 103 superseded our Court's case law on the procedure required to preserve a continuing objection for appellate review. Similarly, effective July 1, 2026, our Supreme Court has further amended Indiana Evidence Rule 103(b) to read as follows:

> (b) Not Needing to Renew an Objection or Offer of Proof.

> Once the court rules definitively on the record—either before trial or at trial— a party need not renew an objection or offer of proof to preserve a claim of error for appeal. This includes a ruling on a motion in limine.

Ex. A, Order Amending Rules of Evidence, No. 26S-MS-8 (Ind. Mar. 6, 2026). Especially notable in the most recent amendment is the expansion of the "at trial" requirement to "either before trial or at trial" for cases heard on or after July 1, 2026.

magic language required under Evidence Rule 103 to preserve appellate review over an objection, even a continuing objection, that otherwise hits those marks. However, our case law has long made clear that, despite a prior, preserved objection, a defendant waives appellate review of the admission of evidence if he later informs the court that he has no objection to that same evidence. That is what happened here, so Rodriguez's evidentiary challenge on appeal is waived. As for the jury instructions, the trial court did not err.

We affirm.

## Facts and Procedural History

Rodriguez and Demarcus Davis[3] have been friends since 2020. In June 2023, Rodriguez lived in an upstairs room at a home owned by his second cousin, Mary Vasquez, on 13th Street in Anderson. On June 22, Rodriguez and Davis exchanged messages in which they both lamented their need "to get some money." Tr. Vol. 5, p. 9.

Five days later, Rodriguez met with a friend named Derrick, and the two played "[c]ards and dominos" on Vasquez's front porch. Tr. Vol. 3, p. 42. Derrick noticed that Rodriguez was on his phone frequently. Around 7:11 p.m., Rodriguez texted Davis "[t]hirty thousand," followed by, "[b]ring the strap." Tr. Vol. 5, p. 10. Davis responded: "Let me pop out on him." *Id.* at 11. An

---

[3] Davis was Rodriguez's codefendant. His appeal is before our Court in case number 25A-CR-622.

investigating officer later testified that those messages were "indicative of a robbery being set up." Tr. Vol. 5, p. 20.

[6]     Shortly after Davis's response, Tim Kates arrived at Vasquez's residence in a large black vehicle. Rodriguez texted Davis, "[h]e here." *Id.* at 11. Davis immediately responded: "On my way!" *Id.*

[7]     Kates exited his vehicle with a black pouch ("like a child's pencil bag for school"). Tr. Vol. 3, p. 200. Kates, Rodriguez, and Derrick chatted for a few minutes, and then Davis arrived. Rodriguez went out to meet Davis at Davis's vehicle; as he did so, Kates took some money out of the black pouch and put it in his pockets. Rodriguez and Davis then arrived on the front porch, and Davis and Kates then went inside Vasquez's residence together. Rodriguez joined them inside the residence about one minute later.

[8]     About two minutes after that, Davis exited the residence, went to his vehicle for a moment, and then went back inside the residence. Before the front door had closed behind him, Derrick, who was still on the front porch, heard at least six "[r]apid" gunshots "[g]rouped together." *Id.* at 49, 203. Derrick immediately fled. Davis exited the residence a few seconds later. As he exited, he was holding a handgun, and his pockets were stuffed with money. Rodriguez exited a few seconds after Davis; as he did so, he was holding "a handful of money" that he was "shoving" into his pocket, and he "picked up a bill" that Davis had dropped. *Id.* at 207-08.

[9] Davis promptly left the scene in his own vehicle. Rodriguez, meanwhile, stayed on the front porch for about an hour. He then went to Kates's vehicle, removed a tote and a rifle, and then "wip[ed] the doors and door handles" with his clothing. *Id.* at 209. Rodriguez placed the tote and rifle inside the residence and then returned to the front porch, where he started "counting [the] cash." *Id.* at 211.

[10] Late that evening, Vasquez received a call that the front door to her residence was sitting open. Vasquez went to the residence, and, upon entering it, she observed Kates's body. He had been shot six times and had died as a result of his wounds; he likely died several minutes after he had been shot, and all of the bullets entered his body from either the back or the side. Vasquez's daughter called local law enforcement.

[11] Investigating officers located ten spent 9mm shell casings inside the residence. Eight were found on the opposite side of the room from Kates's body; one was lying near his body; and one ended up in an adjacent room near the other eight casings. *See* Ex. Vol. 1, p. 44. Seven of the shell casings were for Federal-brand bullets; those seven bullets had been fired from the same firearm. Officers also observed a 9mm handgun lying near Kates's body; none of the bullets recovered from the scene had been fired from that handgun. Kates's black pouch was empty, but he had some cash in his clothing.

[12] Officers also learned that Vasquez had four security cameras around the residence, one for each side. The officers seized that equipment and identified

Davis and Rodriguez as suspects. Indiana officers apprehended Rodriguez in mid-July, and Mississippi officers apprehended Davis shortly thereafter.

[13] The State ultimately charged both Davis and Rodriguez with the same offenses: murder, felony murder, Level 3 felony robbery, and for being habitual offenders, and the trial court held their joint trial in January 2025. Vasquez, Derrick, and investigating officers testified during the State's case-in-chief. The State also had Vasquez's home surveillance system and recordings from the time of Kates's murder admitted into evidence.

[14] When the State first sought to admit the video-recording system at trial, which was prior to the recordings themselves, Rodriguez objected to the admission of any recorded evidence that showed him removing the tote and rifle from Kates's car. Tr. Vol. 2, pp. 214-16.[4] The trial court overruled Rodriguez's objection. Rodriguez did not specifically ask for a "continuing" objection and did not thereafter object to the evidence introduced at trial regarding his removal of the tote and rifle from Kates's car. *See* Tr. Vol. 3, pp. 208-09. In fact, when the State sought to have the specific recording that showed Rodriguez removing the tote and rifle admitted into evidence, the trial court asked Rodriguez if he had any objection, and Rodriguez responded: "No objection." *Id.* at 32.

---

[4] Specifically, Rodriguez objected at trial to recordings from "after the actual incident," *i.e.*, the shooting, for the reasons "previously made" at a pretrial hearing on his motion in limine. Tr. Vol. 2, p. 214. The trial court acknowledged the substance of Rodriguez's objection. *Id.* at 214-15.

[15]     Davis and Rodriguez did not present any evidence in their own defenses, yet they sought and received a self-defense instruction on the theory that Kates's apparent possession of a handgun may have supported a justified shooting. In particular, they sought to have the court instruct the jury with Indiana's pattern self-defense instruction, which does not explicitly state that self-defense in Indiana must be measured by both a subjective and an objective standard. Thus, the State sought to add the following paragraph to the self-defense instruction: "Self-defense is measured by both a subjective and [an] objective standard; the defendant must have actually believed deadly force was necessary to protect himself, but his belief must also be one that a reasonable person would have held under the circumstances." Tr. Vol. 5, p. 107. Rodriguez joined in Davis's objection to that language, but the trial court overruled the objection and instructed the jury accordingly.

[16]     Thereafter, the jury found Rodriguez guilty in relevant part of murder and Level 3 felony robbery. Rodriguez then admitted to being a habitual offender, and the trial court sentenced him to an aggregate term of ninety-six years in the Department of Correction.

[17]     This appeal ensued.

## 1. Rodriguez waived appellate review of the post-shooting video-recording evidence when he told the court he had no objection to that evidence.

[18] On appeal, we first address Rodriguez's challenge to the trial court's admission of the video-recording evidence that shows him removing the tote and rifle from Kates's car after the shooting. The State argues that Rodriguez's appeal has not been preserved for our review both because Rodriguez did not follow the proper procedure for preserving a continuing objection and also because he told the court, later at trial, that he had no objection to the video recording.

[19] We disagree with the State's first theory of waiver. It is *historically* true that Indiana's case law has required the following steps for the preservation of a continuing objection:

> Indiana recognizes continuing objections. Robert Lowell Miller, Jr., 12 Indiana Practice, § 103.110 at 63 (3d. ed.2007); *see also Smith v. State*, 565 N.E.2d 1059, 1061 (Ind.1991) ("the *Hobson [v. State* (1986[)], Ind. App., 495 N.E.2d 741] court expressly approved of using the device of a continuing objection.")) (quotation omitted), *overruled in part*; *Simmons v. State*, 760 N.E.2d 1154, 1159 (Ind. Ct. App. 2002) ("We have not expressly disapproved continuing objections."). This is because continuing objections serve a useful purpose in trials. That is, they avoid the futility and waste of time inherent in requiring repetition of the same unsuccessful objection each time evidence of a given character is offered. Miller, § 103.110 at 62.
>
> However, as this case illustrates, there are dangers to using continuing objections. As such, the proper procedure must be carefully followed if attorneys wish to use continuing objections

and still properly preserve the admission of specific evidence as an issue on appeal. First, objecting counsel must ask the trial court to consider the same objection to be made and overruled each time a class of evidence is offered. *Id.* It is within the trial court's discretion to grant counsel a continuing objection. If the trial court grants the continuing objection, then counsel does not have to object each time the class of evidence is subsequently offered. Miller, § 103.110 at 62. This is an exception to the general rule that a party must continue to object and obtain a ruling for each individual instance of inadmissible evidence. 75 Am. Jur. 2d Trial § 325 (2008). If, however, the trial court does not specifically grant the right to a continuing objection, it is counsel's duty to object to the evidence as it is offered in order to preserve the issue for appeal. *Id.*

If the class of evidence to which the continuing objection is lodged is sufficiently defined, the trial court is satisfied that repeated objections to the evidence would be futile, and the trial court grants the continuing objection, presentation of the evidence is enhanced and frustration and impatience is reduced. *See* Miller, § 103.110 at 62-63. Objecting counsel must ensure, however, that the continuing objection fully and clearly advises the trial court of the specific grounds for the objection. *Id.* at 63-64; *see also Simmons*, 760 N.E.2d at 1159; *Sullivan v. State*, 748 N.E.2d 861, 864 (Ind. Ct. App. 2001); 75 Am. Jur. 2d at § 325. If so, the issue is sufficiently preserved for appeal. *Sullivan*, 748 N.E.2d at 864.

*Hayworth v. State*, 904 N.E.2d 684, 691-92 (Ind. Ct. App. 2009) (footnotes omitted; some alterations original to *Hayworth*); *see also Hutcherson v. State*, 966 N.E.2d 766, 770 (Ind. Ct. App. 2012) (citing *Hayworth*), *trans. denied*. Thus, under the rule articulated in *Hayworth*, trial counsel must not only lodge a contemporaneous objection with a specifically identified ground for the

objection but also must expressly request, and expressly receive, recognition of the objection as a "continuing" one. 904 N.E.2d at 691-92.

[20] However, there has been a split in our Court regarding whether such magic language survived an amendment to Indiana Evidence Rule 103(b), which had an effective date of January 1, 2014. Indiana Evidence Rule 103(b) simply states: "Once the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim of error for appeal." At least two panels of our Court, citing Rule 103(b), have concluded that a claim of error in the admission of evidence is preserved for appellate review under Rule 103(b) by simply "renewing" a pretrial motion to suppress at trial and having the court definitely state that it is "denying" that objection. *K.G. v. State*, 81 N.E.3d 1078, 1080 n.5 (Ind. Ct. App. 2017) (citing Ind. Evidence Rule 103(b)); *see also Bailey v. State*, 131 N.E.3d 665, 676 (Ind. Ct. App. 2019) (stating that a claim of error in the admission of evidence was preserved for appellate review where, after the defendant objected at trial, the trial court stated that it would treat that objection as a Rule 103(b) objection, which the court then denied), *trans. denied*. A third panel has concluded that Rule 103(b) required "supplement[ing]" *Hayworth* by noting that a request for a continuing objection "should *ideally* specify that it is pursuant to Evidence Rule 103(b)." *Hostetler v. State*, 184 N.E.3d 1240, 1246 (Ind. Ct. App. 2022) (emphasis added), *trans. denied*.

[21] At least one published opinion of our Court, and numerous unpublished memorandum decisions, have relied on the *Hayworth* language for determining

whether an objection to evidence was properly preserved for appellate review despite the trial having occurred after the effective date of the amendment to Indiana Evidence Rule 103(b). Namely, in *Hornsby v. State*, a panel of our Court concluded that the appellant had failed to preserve appellate review of the admission of evidence when he "failed to procure" express recognition from the trial court of a continuing objection. 202 N.E.3d 1135, 1148 (Ind. Ct. App. 2023) (citing *Hayworth*, 904 N.E.2d at 692), *trans. denied*. The *Hornsby* panel thus subjected the appellant's arguments to fundamental-error review. *Id.* The opinion makes no mention of Indiana Evidence Rule 103(b). *See id*.

[22] We conclude that the language of Evidence Rule 103, especially in light of its March 6, 2026 amendment that becomes effective July 1, 2026, speaks for itself and controls. To preserve appellate review of a continuing objection to the admission of evidence at trial, the objecting party must "timely object" to the evidence, "state[] the specific ground" for the objection unless that ground is already "apparent," and receive the trial court's "definitive[]" ruling on the objection "on the record at trial."[5] Evid. R. 103(a), (b). The Rule does not require the objecting party to specifically identify his or her objection to the admission of evidence as a "continuing" one, and it says nothing about requiring the trial court to specifically identify the objection as a "continuing" one. *See id.*

---

[5] Again, beginning July 1, 2026, the "at trial" language has been amended to also capture pretrial requests to exclude evidence.

[23] This reading of Evidence Rule 103 is consistent with the purposes of the rule that an issue is waived for appellate review if it is not presented to the trial court first:

> This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. . . .

*GKC Ind. Theatres, Inc. v. Elk Retail Invs., LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002) (citations omitted). The purpose of Evidence Rule 103 is to ensure that the reviewing court is in fact reviewing an issue the trial court has ruled on. Thus, as Evidence Rule 103, including its 2026 amendment, does not require any magic language to preserve appellate review of a continuing objection, we reject the State's first theory of waiver.

[24] As for the State's second theory of waiver, our case law is unambiguous. On this point, the *Hostetler* panel made clear that other language from *Hayworth* survived the amendment to Indiana Evidence Rule 103(b):

> . . . The [Evidence Rule 103(b)] amendment did not change or overrule the existing case law explaining that a defendant can waive a continuing objection by affirmatively stating that he has no objection when evidence is introduced and admitted at trial. We take this opportunity to echo and supplement the *Hayworth*

Court's clarification regarding the "proper procedure" for a defendant who seeks to rely upon a continuing objection, which is now set forth under Evidence Rule 103(b). Upon a defendant's "timely" and "sufficiently specific objection to a particular class of evidence" at trial, the defendant's request for a continuing objection should ideally specify that it is pursuant to Evidence Rule 103(b). . . .Thereafter, "during the subsequent admission of that class of evidence" to which the defendant sought the continuing objection under Evidence Rule 103(b), the "proper procedure" is for the defendant to "remain silent[.]" *Hayworth*, 904 N.E.2d at 686, 694. If the defendant were to make a statement to the admission of the evidence, especially where a trial court asks if the defendant has any objection, the recommended procedure would be for the defendant to simply state that he is relying upon his continuing objection under Evidence Rule 103(b).

184 N.E.3d at 1246. As our Supreme Court has made clear, an "appellant cannot on the one hand state at trial that he has no objection to the admission of evidence and thereafter in this Court claim such admission to be erroneous." *Halliburton v. State*, 1 N.E.3d 670, 679 (Ind. 2013) (quotation marks omitted).

[25] We thus agree with the State's second theory of waiver here. After Rodriguez had properly objected to the admission of evidence showing him removing the tote and rifle from Kates's car after the shooting, he then affirmatively told the trial court that he had "[n]o objection" to the admission of the specific video recording that showed him removing those items from Kates's car. Tr. Vol. 3, p. 32. Accordingly, and for that reason, we conclude that Rodriguez waived his previously preserved objection. *Hostetler*, 184 N.E.3d at 1246-47. As

Rodriguez's evidentiary challenge is not properly before us, we do not consider it.

## 2. The trial court properly instructed the jury.

[26] Rodriguez also argues on appeal that the trial court erred when it instructed the jury on self-defense. As our Supreme Court has made clear:

> Instructing a jury is left to the sound discretion of the trial court and we review its decision only for an abuse of discretion. We undertake a three-part analysis in determining whether a trial court has abused its discretion. First, the reviewing court should determine whether the tendered instruction is a correct statement of the law. Second, it examines the record to determine whether there was evidence present to support the tendered instruction. Finally, it determines whether the substance of the tendered instruction was covered by another instruction or instructions.

*Washington v. State*, 997 N.E.2d 342, 345-46 (Ind. 2013) (citation modified).

[27] Rodriguez does not dispute that the language added by the court to his proffered jury instruction, regarding both the subjective and objective standards for self-defense, was correct as a matter of law.[6] *See id.* at 349. Rather, his only argument on appeal is that the trial court's addition of that language created confusing surplusage. We discern neither confusion nor surplusage in the

---

[6] Much of Rodriguez's brief on this issue appears to have been copied and pasted from our Supreme Court's opinion in *Washington*, albeit without attribution. *Compare* Appellant's Br. at 12-17 *with Washington*, 997 N.E.2d at 346-49.

court's jury instruction on self-defense. We therefore reject Rodriguez's argument.

## Conclusion

[28] For all of these reasons, we affirm Rodriguez's convictions.

[29] Affirmed.

Vaidik, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana